**Larry L. Linder, OSB #010724**
llinder@salememploymentlawyer.com
The Law Office of Larry L. Linder, LLC
3000 Market Street NE, Suite 150
Salem, OR 97301
Tel: (503)585-1804
Fax: (503)585-1834
Attorneys for Plaintiff


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **LORRIE BIGGS,** | Case No._____ |
| Plaintiff, | COMPLAINT – Violation Of 42 U.S.C 1983; Violation of Whistleblowing Laws (ORS 659A.199, 659A.203, 659A.218, 659A.230); Violation of ORS 659A.030(1)(f);Violation of ORS 659A.030(1)(g); Intentional Infliction of Emotional Distress; Defamation; Intentional Interference With Economic Relations; Public Disclosure Of Private Facts; and False Light |
| vs. | |
| **CITY OF ST. PAUL**, an Oregon Municipal Corporation, **KIMBALL WALLIS**, an Individual, and **LAURA SCHROEDER**, an Individual, | |
| Defendants. | (Jury Trial Demand) |


Plaintiff alleges:

## JURISDICTION AND VENUE

1.

Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 as it is brought pursuant to

claims under 42 U.S.C. § 1983. All conditions precedent to the institution of this lawsuit have

been met. Plaintiff timely filed tort claim notices for claims subject to that requirement. Plaintiff

request a jury trial in this matter.

///

///


Page 1—Complaint

## SUPPLEMENTAL JURISDICTION

2.

This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. Plaintiff's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

## VENUE

3.

Venue is appropriate in this Court pursuant to 28 USC § 1391, because the events giving rise to this complaint occurred in Marion County, Oregon. Plaintiff requests a jury trial in this matter.

## PARTIES

4.

Lorrie Biggs ("Plaintiff") is a resident of Marion County, Oregon. Defendant, Kimball Wallis ("Wallis"), has, at all relevant times, been the mayor of St. Paul, Oregon. Defendant, City of St. Paul ("St. Paul"), is a municipal corporation located in St. Paul, Oregon. Defendant, Laura Schroeder ("Schroeder"), has at relevant times been performing the role of St. Paul's city attorney per contract signed on or about December 10, 2015.

## FACTUAL ALLEGATIONS

5.

Plaintiff was hired by St. Paul in the position of City Recorder on or about September 8, 2005 and took on additional duties of the City Treasurer in or about September 2007. After Wallis became mayor, he began removing job duties that Plaintiff had. Plaintiff's employment was terminated on or about January 26, 2018. At all relevant times, St. Paul had either two or

Page 2—Complaint

three employees. In St. Paul's Charter, employees are only to be supervised by the full city council. St. Paul has a weak mayor model. The Charter also states that the mayor has no supervisory or disciplinary duties over employees.

6.

Wallis became St. Paul's mayor in or about December 2014 and has maintained that elected position since that time. Schroeder became St. Paul's city attorney on or about December 10, 2015 and has maintained that position since that time.

7.

Plaintiff made whistleblowing complaints and disclosures, and/or speech on matters of public concern, which include, but are not limited to:

a)  In 2013, the then mayor and Councilor Mike Bernard caused severe damage to the city well. The then mayor tasked Plaintiff with finding money to fix the problem in an effort to cover up their mistake.  When Plaintiff called into question their mistake, she became the subject of retaliatory conduct;

b)  In early 2014, Plaintiff complained that Councilor Bernard was having someone do work on St. Paul's main storm drain colvert without council approval and without the project being engineered.  Plaintiff was told she did not know what she was talking about;

c)  In or about November 2014, Wallis became the mayor elect. He began attempting to have Plaintiff take actions and do work that Plaintiff reasonably believed violated St. Paul's charter.  When Plaintiff questioned the actions that Wallis was taking and advised him that they went against St. Paul's charter, he began an unauthorized investigation of her job duties and performance;

d)  On or about January 23, 2015, Plaintiff discovered that, if parties that rented the City Hall were selling alcohol at their events, they are required to have a special OLCC permit.

Page 3—Complaint

Plaintiff sent a very detailed email to the St. Paul Parish regarding this as they were going to use the City Hall and sell alcohol.  Approximately ten minutes after Plaintiff sent the email, Wallis showed up at the office and accused Plaintiff of "stirring the turd pot" with the St. Paul Parish;

e)  Beginning in 2015, and continuing until Plaintiff's termination, Plaintiff complained about Wallis authorizing and spending money on attorney fees when he did not have authority to do so.  St. Paul's charter did not give Wallis spending authority without a vote of the City Council;

f)  On or about February 5, 2015, Plaintiff complained to the then city attorney, John Rankin ("Rankin"), that Wallis was harassing her and retaliating against her;

g)  On or about February 6, 2015, Plaintiff reached out to CIS, St. Paul's insurance provider, and complained about the harassment and retaliation from Wallis.  Plaintiff regularly reached out to CIS asking for help with Wallis harassment and retaliation;

h)  On or about February 12, 2015 at the City Council meeting, Plaintiff complained about the harassment and retaliation from Wallis;

i)  On or about March 10, 2015, Wallis filled out a building permit application and prepared the packet for the Rodeo Association and agreed to waive their fees for the permits.  Plaintiff confronted Wallis about agreeing to waive the fee as he does not have authority on spending issues;

j)  Plaintiff filed a grievance on March 17, 2015 regarding a hostile work environment, whistleblowing and sexual harassment;

k)  During 2015, Plaintiff contacted Rankin regarding her grievance being unresolved and the Charter not being followed.  In response, Rankin reminded her she was an at will employee and that the City Council had the authority to manage any way they saw fit;

Page 4—Complaint

l) During 2015, Plaintiff reported to the City Council that then employee Jim Riggleman made sexually harassing comments.  In response, Councilor Bernard told Plaintiff she did not know what she was talking about;

m) In or about September 2015, Councilor Bernard came into the office.  When Plaintiff disclosed to him the retaliation she was suffering from Wallis, Councilor Bernard responded by making a hand gesture like he was masturbating;

n) On or about October 21, 2015, Plaintiff contacted Councilor Koch in tears and let her know that she was not going to be able to go to work on that date due to Wallis retaliation and hostile work environment created by him;

o) On or about August 13, 2015 at the City Council meeting, Rankin explained to the council that the large legal fees were caused because Wallis was overstepping his authority under the charter and getting involved in things that were outside of his authority per the Charter in taking away Plaintiff's responsibilities.  Plaintiff complained that the City Council did not communicate with her regarding a recent customer complaint and Rankin agreed. Plaintiff stated that she tried to address the complaints that made up the staff grievance with the City Council but was always told it was not the time or place to which Rankin agreed. Rankin stated that when Wallis came in, there were immediate changes that had a strong adverse effect on Plaintiff;

p) On or about August 13, 2015 at the City Council meeting, Plaintiff asked the City Council if they were involved in the process the grievance was going to take.  Wallis (the subject of most of the grievance) interrupted stating that it was handled like a grievance and the Council received a copy of it and they were notified they would be responding to staff about it.  Biggs stated Lee Koch ("Koch") (her co-worker and co-whistleblower) and her wanted to talk to the Council and that still had not happened. Plaintiff explained that the City Council had a

Page 5—Complaint

list of items from the recommendations from Nancy McDonald ("McDonald") (a person Wallis, without authorization, tasked with speaking to Plaintiff and Koch) the City Council needed to do as soon as possible, and they had not done one thing on the list;

q) Wallis without City Council approval wrote an RFP and advertised online for a new city attorney.  Plaintiff questioned the mayor doing this as he did not have authority to do so under St. Paul's charter.  Wallis responded that Plaintiff "can't fiddle fart around to get this done;"

r) In or about September 2015, Plaintiff complained to Councilor Frank that the City Council had done nothing with the grievance and the sexual harassment;

s) On or about September 10, 2015, Plaintiff reported to the City Council and Wallis that the grievance was still not resolved.  Wallis stated that this once again was not the time to discuss the issue;

t) In or about September 2015 at the City Council meeting, Plaintiff reported to the City Council that Wallis used the city attorney for his own personal projects and ran up a bill of over $25,000 without authorization by the City Council and the City did not have one document to show for it;

u) On or about November 6, 2015, Plaintiff complained about Wallis' conduct to Councilor LaFevre and Councilor Koch.  They responded that they did not know what they could do. Plaintiff regularly complained until her termination from employment to Councilor LaFevre and Councilor Koch regarding Wallis' retaliation and hostile work environment. Their response was typically that they did not know what they could do;

v) On or about November 6, 2015, Plaintiff filed a worker's compensation claim due to the harassment and retaliation she was suffering predominantly from Wallis;

Page 6—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

w) On or about November 12, 2015, at the City Council meeting, Wallis brought up a payroll document he created regarding Plaintiff's wages. Plaintiff told Wallis that the information in his document was incorrect and that he used numbers that were not accurate. Further, Plaintiff stated that his accusation that she engaged in fraud was incorrect. Wallis became very aggressive stating Plaintiff was wrong. Koch brought up the unresolved grievance and asked the City Council when it would be addressed. Wallis stood up and slammed the gavel down on the table with considerable force;

x) On or about December 10, 2015 at the City Council meeting, Wallis created a resolution accusing Plaintiff of not doing her job correctly as a Treasurer. He stated that Plaintiff was not budgeting money per state law. He suggested they hire someone else to come in and do Plaintiff's job for her. Plaintiff spoke up and stated that he was not correct, and if he wanted Plaintiff to help him read the budget, she would be happy to do that but the accusation he was making was incorrect. Wallis became very argumentative accusing Plaintiff of lying. He then stated that Plaintiff did not have the knowledge, education or experience to know;

y) On or about February 24, 2016, Plaintiff was able to address her complaints with the City Council. She reported to the City Council that none of the items Koch and herself discussed with McDonald regarding sexual harassment, hostile work environment, and retaliation were included in her report. Plaintiff and Koch provided the City Council with a copy of the bullet point document they prepared and went over with McDonald. The City Council admitted they knew nothing about any of the items on the list;

z) On or about February 25, 2016, Councilor Bernard came in the office to talk to Plaintiff about the meeting the night prior. This made Plaintiff very uncomfortable because he was the individual that engaged in the sexually harassing conduct. Councilor Bernard sat down and wanted to talk about the allegations that Plaintiff had given McDonald. When Plaintiff

Page 7—Complaint

asked him why he thought the information was not included in McDonald's report, he started yelling at Plaintiff that she needed to sign her own paycheck, Plaintiff told him that she could not do that.  He told her that her refusal was fucking bullshit and she need to "balls up and do it;"

aa) On or about March 8, 2016, Plaintiff called and spoke to Adrian Albrich ("Albrich") from CIS asking for help with the mayor's illegal conduct and retaliation.  Albrich told her that his hands were tied, because Wallis told them to back off and stay out of it;

bb) On or about October 4, 2016, Wallis published on his "Community" Facebook page statements that were false.  Plaintiff sent a request asking the City Council to do something to stop the publication as it violated St. Paul's Social Media Policy.  The City Council did not respond;

cc) On or about October 19, 2016, Plaintiff sent an email to the City Council asking them to do something about the City Council meetings because she is being retaliated against and subjected to hostile people from the community;

dd) On or about October 20, 2016, Plaintiff told Councilor Bernard that something needed to be done at the City Council meetings due to how staff were being treated.  Councilor Bernard responded by making a gesture simulating masturbating;

ee) In or about October 2016, Plaintiff sent an Email to Schroeder requesting a work session with the City Council to discuss the unresolved issues with the 2015 staff grievance.  Schroeder responded that she would not recommend scheduling one;

ff) On or about November 1, 2016, Councilor Koch came in the office to sign a payroll check and told Plaintiff to provide her a copy. Plaintiff told her she cannot have a copy of Plaintiff's personal check stub and Councilor Koch argued that she is an elected official and has a right to it. Plaintiff told her she cannot have a copy, and she cannot take it home with her.

Page 8—Complaint

Councilor Koch told Plaintiff she had taken copies of them before, and Plaintiff responded that she had no right to do that;

gg) On or about September 21, 2016, Plaintiff Complained to Albrich from CIS about Wallis' abusive and illegal conduct. Albrich stated that she may have to get an attorney to get the City Council on board with making changes, because Schroeder has basically kicked CIS out and has stated St. Paul was making progress on the items addressed in McDonald's 2015 report. Plaintiff reported to Albrich that St. Paul had not followed through on one thing in the report;

hh) On or about September 22, 2016, Plaintiff complained to Schroeder's office that Plaintiff had some billing concerns with the large invoices St. Paul received.  According to her contract with St. Paul, all the work was supposed to go through and be authorized by Plaintiff and that was not happening. Plaintiff spoke to Kelly Wesson with Schroeder's office who stated that there is little she can do but that she knows that Schroeder is going to say St. Paul owes the money. Plaintiff set up a meeting to sit down with Schroeder's office on October 6, 2016 to go over her concerns with the bills;

ii) On or about September 30, 2016, Plaintiff complained to the City Council that she received an inquiry from KPTV 12 that the city water was causing people's hair to fall out and was making people sick. Plaintiff stated that the inquiry was due to posts on Wallis' Facebook page;

jj) On or about October 4, 2016, Councilor Koch came in the office to sign Plaintiff's payroll check and told Plaintiff that she wanted a copy of her check. Plaintiff told her she could not have a copy of her personal check stub and Councilor Koch argued that she is an elected official and Plaintiff is a public employee and she does have a right. Plaintiff told her that she can look at them all day long, but she cannot have a copy and she cannot take it home with

Page 9—Complaint

her. Councilor Koch was angry and stated again that it is a public record and she has a right to it, and Plaintiff told her no. Councilor Koch told Plaintiff that she has taken copies Plaintiff's checks before, and Plaintiff told her she had no right to do that. The normal process would have been to make a public records request. Plaintiff acquiesced in providing a copy of the pay stub out of fear of losing her job;

kk) On or about October 6, 2016, Koch contacted Schroeder and filed a complaint that Councilor Koch took a copy of Plaintiff's paycheck, and that Koch and Plaintiff were constantly fearful of losing their jobs;

ll) On or about October 6, 2016, Councilor Koch, Councilor LaFevre, and Plaintiff met with Schroeder at her office to go over the legal bills. Plaintiff raised concerns with Schroeder's billing system, projects that were not approved by Council, and that Wallis continued to incur legal bills by contacting Schroeder. Schroeder stated that most of the work was going to be "pro bono," including the code project. Councilors Koch and LaFevre raised concerns about Wallis' constant harassment of Koch and Plaintiff;

mm)   On or about October 7, 2016, Plaintiff complained to Schroeder that Wallis blocked her from his "Community" Facebook page. Schroeder expressed a belief that it was illegal for Wallis to block Plaintiff, as Wallis claimed it was a public site;

nn) On or about October 18, 2016 at the City Council meeting, Plaintiff complained that Wallis continually violated St. Paul's Social Media Policy by representing himself as the Mayor on the site, publishing misleading and inaccurate information, and making hurtful and false publications about Plaintiff on the site;

oo) On or about October 18, 2016 at the City Council meeting, Plaintiff complained that it was wrong to waive fees for water usage for the Fire Department as it caused tax payers within the city limits to carry the burden of the Fire District when all county residents inside the fire

Page 10—Complaint

district should also be required to cover those fees. In addition, Plaintiff questioned why the city spent $10,000 to install a water meter and vault at the fire station if they had no intention of billing them for usage;

pp) On or about October 19, 2016, Plaintiff sent an email to the City Council and asked them to do something about the disruptive audience at the City Council meetings, because they were treating staff in an abusive manner. Plaintiff reported that the Council meetings were not run according to St. Paul's City Council Rules or Roberts Rules of Order;

qq) On or about October 20, 2016, Councilor Bernard came in the office to talk about the City Council meeting. Plaintiff told Councilor Bernard that she was on medication due to the stress;

rr) On or about October 21, 2016, Plaintiff spoke with Schroeder requesting a work session with the City Council to discuss the unresolved issues with the 2015 grievance. Schroeder stated that she would not recommend to the City Council that they do that;

ss) On or about October 23, 2016, Plaintiff complained to Councilor Bernard that Wallis was retaliating against Plaintiff and defaming her reputation. Bernard corroborated Plaintiff's complaint by providing an example of Wallis stating false information about Plaintiff to the public;

tt) On or about October 23, 2016, Plaintiff complained to Schroeder that Wallis was not preserving order and decorum during City Council meetings in violation of the Charter. Schroeder responded that per the St. Paul Charter, if Wallis was not preserving order and decorum, the City Council President was responsible;

uu) On or about November 15, 2016, KPTV Channel 12 aired a news story on St. Paul's water issues. After instructing City staff to refer all questions about the water issue to himself or Schroeder, Wallis posted on his "Community" Facebook page a link to the news story about

Page 11—Complaint

Law Office of Larry L. Linder, LLC
3000 Market Street NE, Suite 150
Salem, OR 97301
(T)(503)585-1804 (f) (503)585-1834
info@salememploymentlawyer.com

the City's water issue, and also wrote comments on Facebook about the water issue. When Plaintiff questioned Wallis about posting comments on social media regarding the water issue, he became very angry with Plaintiff and stated that she was "missing the bigger picture;"

vv) On or about November 15, 2016, Plaintiff sent an email requesting permission to use some vacation time. Upon Councilor Koch approving Plaintiff's use of vacation time, Wallis told Councilor Koch that she had no authority to approve Plaintiff's use of vacation time and that Plaintiff must obtain approval for vacation through the City Council in a regular City Council meeting (where the public would be present and could comment);

ww) On or about November 21, 2016, Plaintiff complained to the City Council about Wallis excluding her from meetings regarding projects she was assigned to;

xx) On or about December 26, 2016, Plaintiff filed a tort claim notice with St. Paul alleging discrimination and whistleblowing, among other claims;

yy) On or about January 3, 3017, Plaintiff complained to Councilor Koch that she was overwhelmed with stress due to her treatment by Wallis and the City Council;

zz) On or about January 5, 2017, Plaintiff complained to Councilor Koch that Schroeder and Wallis were taking over her job duties and excluding her involvement;

aaa) On or about January 13, 2017, Plaintiff complained to Councilor Marty Waldo about Schroeder and Wallis taking over her job duties;

bbb) On or about January 16, 2017, Plaintiff told Councilor Halter that it was his and the City Council's responsibility to fix the problems caused by Wallis;

ccc) On or about January 16, 2017, Plaintiff complained to Councilor Waldo that Wallis was incurring legal bills from Schroeder for work that was not authorized by the City Council;

Page 12—Complaint

Law Office of Larry L. Linder, LLC
3000 Market Street NE, Suite 150
Salem, OR 97301
(T)(503)585-1804 (f) (503)585-1834
info@salememploymentlawyer.com

ddd)    On or about January 25, 2017, Plaintiff requested that the City Council review Schroeder's billing statements in a work session as there were errors;

eee)    On or about February 1, 2017, Wallis directed Plaintiff to bypass City Council authorization and make payment to Schroeder for legal bills that Wallis incurred without City Council authorization. Plaintiff opposed this instruction;

fff) On or about February 2, 2017, Plaintiff sent an email to Councilors Koch, Waldo, and Halter to ask why they continued to allow Wallis to overstep his authority and spend money without City Council authorization;

ggg)    On or about February 3, 2017, Plaintiff complained to Councilor Koch and Waldo that St. Paul should not pay Schroeder's bill without first reconciling the bills because it involved thousands of dollars of expenses not authorized by the City Council and tax payers depended on the City Council to ensure that expenditures were proper and authorized;

hhh)    On or about February 16, 2017, Plaintiff complained to Councilor Waldo about him taking Schroeder's bills to Wallis and asking Wallis (who was responsible for many of the unauthorized bills) to reconcile the bills, rather than tasking the City Council with the matter;

iii) On or about February 16, 2017, Plaintiff reported to Councilor Koch that Schroeder's bills were given to Wallis to reconcile without City Council approval;

jjj) On or about February 16, 2017, Plaintiff told the City Council that it should be aware of what it was authorizing before it authorized payment to Schroeder. Against Plaintiff's recommendations, the City Council approved payment to Schroeder of money that was not budgeted and expenses that were not authorized by the City Council;

kkk)    On or about February 17, 2017, Plaintiff told Councilor Waldo that asking Wallis to reconcile Schroeder's bills when Wallis authorized them in violation of the Charter was mismanagement and waste of public funds.

Page 13—Complaint

Law Office of Larry L. Linder, LLC
3000 Market Street NE, Suite 150
Salem, OR 97301
(T)(503)585-1804 (f) (503)585-1834
info@salememploymentlawyer.com

lll) On or about April 11, 2017, Plaintiff raised concerns to Councilor Koch regarding Schroeder's attorney bills for work that was not authorized in accordance with the Charter;

mmm) On or about April 21, 2017, Plaintiff reported to Councilor Koch that Plaintiff could not reconcile and fix Schroeder's unauthorized attorney bills, especially in light of incomplete information;

nnn)     On or about April 21, 2017, Plaintiff reported to Councilor Halter that she believed that Schroeder's bills were wrong, as there had not been $10,000.00 worth of legal fees incurred in a month;

ooo)     On or about April 25, 2017, Plaintiff sent an email expressing her concerns that expenditures outside of the normal and regular practice were continually approved by the City Council without first checking with Plaintiff to verify if the funds were available and budgeted; Plaintiff reported that the City Council was violating state budget laws, and that the general fund was $50,000.00 over budget;

ppp)     On or about April 28, 2017, Plaintiff confronted Councilor Halter again about Schroeder's unauthorized bills;

qqq)     On or about May 24, 2017, Plaintiff told Councilor Waldo that Wallis continued to overstep his authority under St. Paul's Charter;

rrr) On or about May 30, 2017 at the City Council meeting, Plaintiff stated that she was not included as the treasurer in the decision for attorney expenditures and that the City Council violated the law by not first making an appropriation transfer prior to the expenditures;

sss)     On or about June 8, 2017, at the City Council meeting, Plaintiff complained that Wallis spent city funds, which he had no authority to spend, at a business that Councilor Mike Dolan was a partner in;

Page 14—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

ttt) On or about June 8, 2017 at the City Council meeting, Plaintiff stated Schroeder charged St. Paul for work that her office had not completed;

uuu)    On or about June 8, 2017 at the City Council meeting, Plaintiff raised a concern that the City Council was making illegal decisions to spend money in executive session and hiding the expenditures from the public and herself;

vvv)    On or about June 9, 2017, Plaintiff sent a complaint to the City Council stating that she could not do her job as treasurer when individual City Council members and Wallis made expenditures without spending authority. Expenditures are only allowed under the Charter by a vote of the City Council;

www)  On or about June 21, 2017, Plaintiff sent an email complaint to Councilor Waldo that she needed to go home due to the stress caused by Schroeder violating hiring policies when hiring a city manager;

xxx)    On or about June 27, 2017, Plaintiff called Councilor Waldo stating that she could not continue to work in an environment of constant harassment and needed to take time off of work;

yyy)    On or about July 3, 2017, Plaintiff contacted Marion County Sheriff's office to report that the city office was broken into. Wallis had no authority under St. Paul's Charter to break into the office;

zzz)    On or about July 3, 2017, Plaintiff contacted Councilor Waldo and told him that his involvement in breaking into the city office was likely illegal as he and Wallis lacked authority by the City Council to break in and additionally they lacked spending authority to hire a locksmith;

aaaa)  On or about July 5, 2017, Plaintiff reported that all three city recording devices were missing. On December 28, 2016, Schroeder previously demanded that Koch provide her the

Page 15—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

recording of a City Council meeting so that it could be erased. During the December City Council meeting, there were statements made that evidence the City Council and Schroeder's illegal conduct and retaliation towards staff;

bbbb)    On or about July 13, 2017, Plaintiff filed a complaint with her City Council liaison, Councilor Waldo, that Wallis made statements to the media about Plaintiff, which were then published, that were both untrue and misleading. Plaintiff stated that Wallis was once again violating St. Paul's Social Media Policy as well has her privacy rights;

cccc)    On or about July 28, 2017, Plaintiff's counsel sent an updated tort claims notice to St. Paul;

dddd)    On or about September 14, 2017, Plaintiff sent an email to Schroeder's office asking why her office billed St. Paul $560.00 to fix their billing issue;

eeee)    On or about September 14, 2017 at the City Council meeting, Plaintiff made complaints that Wallis and individual councilors continued to employ Schroeder to perform tasks when they did not have spending authority to do so. Plaintiff stated additionally that it was excessive spending, noting that in 15 months St. Paul paid Schroeder's office $80,000.00 and owed an additional $25,000.00;

ffff)    At the same meeting, Plaintiff complained that Wallis made false allegations on or about July 20, 2017 regarding Plaintiff's job performance;

gggg)    On or about October 12, 2017 at the City Council meeting, Plaintiff complained that Wallis continued to spend money without proper authorization. Plaintiff also complained that there was no accountability for tasks assigned to Schroeder, and that there needed to be cost estimates and scope of work for large projects not covered under St. Paul's monthly retainer;

8.

In response to the whistleblowing activities and/or protected speech engaged in by

Page 16—Complaint

Plaintiff, Plaintiff suffered retaliation, which includes, but is not limited to:

a)  In retaliation for Plaintiff's whistleblowing, in 2014 she was accused of embezzlement and fraud as a way to discredit her;

b)  In or about August 2014, Councilor Bernard told Plaintiff that he job was a nice job for a girl and that she just needed to accept how things were and make it work;

c)  Shortly after Wallis was elected, and continuing until Plaintiff's employment was terminated, Wallis regularly solicited and fielded complaints about St. Paul's water issues and staff concerns from the public even though the complaints should not have been directed and received by him per St. Paul's charter;

d)  Prior to Wallis taking office, he began giving Plaintiff directives that he was not authorized to give under the charter.  He also began expending money when he had no authorization to do so under the charter.  When Plaintiff communicated to Wallis that he could not do this, he began immediately retaliating against her and making efforts to discredit her;

e)  On or about January 8, 2015, Wallis came into Plaintiff's office and told Plaintiff that she needs to work smarter not dumber and refused to allow staff to make a necessary purchase even though he had no spending authority to challenge the purchase;

f)  Shortly after Wallis was elected mayor, he threatened Koch and Plaintiff that they better get on board with his plan to be a strong mayor or else there would be consequences.  The St. Paul Charter does not allow for a strong mayor system and almost all authority rests with the City Council as a body;

g)  On or about January 18, 2015, Wallis showed up at Plaintiff's house and required her to go over to the water plant with him on her day off.  Wallis had no supervisory authority over Plaintiff per St. Paul's charter;

Page 17—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

h) On or about the morning of January 24, 2015 on Plaintiff's day off, Wallis showed up at Plaintiff's house again with an email. The email stated Wallis had contacted the city attorney and had received an opinion and Plaintiff was to drop everything and pole the Council to get permission for Wallis to sign off on the OLCC application for the Parish;

i) On or about January 28, 2015, Wallis came into Plaintiff's office while Councilor Jenni LaFevre and Koch were having a facilities meeting.  Wallis stated that he had received several complaints from people that the city office has been closed during regular business hours and that staff was meeting and having secret meetings.  When Plaintiff questioned who was saying that because it was not true, Wallis responded stating that he received complaints that Koch and Plaintiff were seen together in the city truck at Costco during work hours and he wanted to know why.  Per St. Paul's Charter and policy, all complainants should have been forwarded to either the staff or the City Council and Wallis should not be taking complaints from the public. Plaintiff complained to Councilor Bernard about Walllis' conduct and Councilor Bernard responded that Wallis could "suck him;"

j) On or about February 5, 2015, Plaintiff received a call from St. Paul's auditing firm because Wallis had complained about the finances of St. Paul and how Plaintiff was managing them. Wallis took this action in retaliation for Plaintiff questioning his authority under St. Paul's charter;

k) On or about March 13, 2015, Wallis asked the City Council to attend a class on Discipline Boot Camp for employees;

l) On or about March 18, 2015, Wallis, without City Council approval, hired Nancy McDonald a consultant for Plaintiff's grievance.  Upon information and belief, he did this to attempt to control any investigation that would be done. He did this without a scope of work or contract

Page 18—Complaint

Law Office of Larry L. Linder, LLC
3000 Market Street NE, Suite 150
Salem, OR 97301
(T)(503)585-1804 (f) (503)585-1834
info@salememploymentlawyer.com

and without bids. Plaintiff notified Wallis that he did not follow the proper process for what he did;

m) After the grievance was filed, Wallis notified the City Council they could not have any contact with staff until the grievance was resolved.  Wallis did not have authority to give this directive and doing so made it more difficult for Plaintiff to do her job;

n) On or about March 20, 2015, Wallis hung around the office waiting for McDonald to arrive to interview Plaintiff.  When she arrived, he stated to her that the staff were "jacks of all trades and masters of none";

o) On or about April 29, 2015, Wallis sent an email questioning the city staff's work schedules and demanding that he be provided the information even though he had no supervisory authority over the staff per St. Paul's charter;

p) On or about May 1, 2015, Wallis sent an email to schedule a Work Session with the St. Paul Rodeo Association to discuss their request to bring water from their well onto city property for dust control and livestock watering.  Staff previously told Wallis that the Oregon Health Authority would not allow it due to the water contamination issues;

q) In April and May 2015, Wallis set up a fire marshall inspection of the city hall without approval from the City Council and without discussing it with city staff.  When the fire marshall found deficiencies in the building that needed corrected, Wallis made statements to blame staff.  Wallis did not include city staff on the emails between the fire marshall and himself giving staff limited information to address public concerns and outcry;

r) On or about May 8, 2015, Rankin sent an email to Plaintiff regarding how the City Council was going to move forward to address the 2015 grievance.  However, the City Council had not even received all of the complaints as McDonald had not documented the concerns in her

Page 19—Complaint

report.  Plaintiff reported to Rankin that the City Council had not been apprised of all of the issues by McDonald;

s) On or about May 14, 2015 at the City Council meeting, Wallis stated that McDonald's report suggests the City Council adopt a policy on accurate time keeping.  Plaintiff explained the auditors just wanted someone to initial her time sheets.  Wallis then stated he wants each staff to do a task log breaking down what the staff do throughout the day.  After this meeting, Wallis began telling the public that Koch and Plaintiff do not even fill out a time sheet which was untrue;

t) On or about May 14, 2015 at the City Council meeting, Koch and Plaintiff asked the City Council when they were going to work on the list of things McDonald told them to do as soon as possible following her report regarding the 2015 grievance.  Wallis played lip service stating that the task list had not been forgotten;

u) In or about May 2015, Wallis claimed that Plaintiff violated the law by budgeting staff retirement and benefits in the budget.  Prior to making these allegations, Wallis voted to approve the budget as written.  Further, the budget was consistent with past decisions of the City Council;

v) On or about May 28, 2015, Wallis contested employee salary increases, benefits and retirement claiming that Plaintiff did the budget incorrectly and that the merit increases were not legal because of Plaintiff's relationship with Councilor Lafevre.  Plaintiff complained about Wallis' conduct to Rankin;

w) In or about May 2015, Wallis demanded all City Council meeting notes from the previous year's discussion of staff salary increases claiming the increases were illegal;

x) On or about June 9, 2015, Wallis contacted Rankin to discuss his concerns with nepotism regarding Plaintiff;

Page 20—Complaint

y) On or about June 10, 2015, Wallis asked for a letter of opinion from Oregon Government Ethics regarding Plaintiff's relationship with Councilor LaFevre. Wallis sent an email to the City Council and staff regarding this. Wallis stated he wanted to do this prior to the next council meeting where staff retirement benefits would be discussed. Wallis stated Councilor LaFevre needed to abstain from voting. This was done in an effort by Wallis to deny retirement benefits to Koch and Plaintiff;

z) On or about June 24, 2015, Wallis contacted the media and was quoted in an article with statements that were retaliatory towards Plaintiff and placed her in a false light;

aa) From 2015 until Plaintiff's termination from employment, Wallis repeatedly solicited complaints from the public regarding Plaintiff in an attempt to give the appearance that Plaintiff had deficiencies in the performance of her duties;

bb) On or about June 26, 2015, in an effort to cause Koch and Plaintiff to appear deficient in their duties, and in retaliation for their protected speech and Whistleblowing, Wallis called in an OSHA Complaint regarding them;

cc) In or about July 2015, Wallis placed an article in the Newberg Graphic regarding a DEQ civil penalty suggesting the penalty was Plaintiff's fault in retaliation for Koch and Plaintiff's protected speech and Whistleblowing;

dd) In or about July 2015, Wallis sent an email stating he was getting the sidewalk project (a project Plaintiff was responsible for) back on track. The project was never off track. Wallis then overstepped his authority in scheduling a meeting regarding the project without Plaintiff's input or involvement;

ee) On or about July 16, 2015, Rankin submitted a large attorney fee bill for the last six months of work that was high in large part due to Wallis' acting outside of his authority under the

Page 21—Complaint

charter, Wallis' retaliation towards staff, and Wallis instructing Rankin to perform work that Wallis did not have the authority to assign.  Wallis blamed Plaintiff for the large bill;

ff)  On or about July 16, 2015 at the City Council meeting, Wallis questioned why Plaintiff thought it was necessary to have authority to approve bills outside of a regular meeting. Plaintiff stated that some of Rankin's bills were for work done prior to the City Council approving the work;

gg) On or about July 21, 2015, Wallis sent Plaintiff an email suggesting that Plaintiff's customer service skills were lacking;

hh) On or about July 23, 2015, Wallis sent the Oregon Government Ethics an unsolicited draft resolution he created regarding her position suggesting that Plaintiff violated Oregon's government ethics law because she acted as the budget officer where her wages and benefits were discussed;

ii)  On or about July 25, 2015, Wallis sent an email that he was sending a newsletter.  Per St. Paul's charter, Plaintiff is responsible for doing this;

jj)  On or about August 8, 2015, Wallis sent an email informing the City Council of his ground rules for the scheduled executive session stating that it is not open to the public or staff.  It was the practice that staff attended these meetings as the decisions in them effected their job duties and work flow;

kk) On or about August 19, 2015, Wallis placed an article in Newberg Graphic titled "St. Paul City Council forces resignation of attorney." In the article, Wallis stated that there was no basis for Plaintiff's grievance;

ll)  On or about September 3, 2015, Wallis sent Plaintiff an email instructing her to put "City Employee Time Keeping and Work Schedules" on the agenda.  When questioned by Plaintiff regarding this, Wallis deflected and would not provide a substantive response.  Upon

Page 22—Complaint

information and belief, Wallis' request was in retaliation for Plaintiff addressing that Wallis wrote the RFP for the attorney position and advertised without City Council authorization;

mm)   In or about September 2015, Councilor Koch reported to Plaintiff that Wallis was coming after Plaintiff;

nn) On or about September 10, 2015 at the City Council meeting; Wallis allowed constituents to Question Plaintiff's work performance and suggest eliminating her position.  Throughout Plaintiff's employment during Wallis' term, and continuing until her termination from employment, Wallis regularly allowed constituents to badger Plaintiff, yell at her, demean her, threaten her, and insult her at the City Council meetings.  Wallis was responsible for keeping order at the meetings.  Most of the statements made toward Plaintiff were directly attributable to false and misleading statements that Wallis published about Plaintiff on his "Community" Facebook page;

oo) During the September 2015 City Council meeting, Wallis allowed one constituent to curse at Plaintiff asking why the hell Plaintiff was pointing at Wallis when asked who spent the money on attorney fees.  Wallis did not nothing to correct the constituent or stop the conduct;

pp) On or about September 11, 2015, Councilor Bernard came by the office and told Plaintiff that she just needed "to grow a set of balls and take care of it" regarding Wallis harassment and retaliation of her;

qq) On or about September 18, 2105, and in violation of St. Paul's charter, Wallis sent Plaintiff an email evaluating her job performance;

rr) On or about September 18, 2015, Wallis sent an email directing that he wanted to allow public comment when Plaintiff's grievance was discussed.  Further, he posted on his "Community" Facebook page an invitation to the constituents to attend the meeting and

Page 23—Complaint

comment on the grievance.  Four days later, Wallis stopped by the office to inform Plaintiff that the meeting to discuss her grievance was cancelled;

ss) On or about September 23, 2015, Wallis placed an article in the Newberg Graphic trying to draw attention to St. Paul negotiating with the Rodeo Association to get people on board with taking on their well for a "back door deal" to extend their lease agreement for 99 years. Wallis was previously told by staff and others that the Rodeo Association well would not be viable for the city given high arsenic levels among other issues;

tt) On or about September 25, 2015, Plaintiff left the office to pick up supplies which was pre-approved.  While she was gone, Wallis noticed the office was closed and called Councilor Koch at home and yelled at her that it was "bullshit" Plaintiff was out of the office. Councilor Koch contacted Plaintiff and instructed her to return to the office immediately because Wallis was upset;

uu) On or about September 29, 2015, and in retaliation for Plaintiff being out of the office picking up supplies four days earlier, Wallis sent an email instructing Plaintiff to put City Office Hours and Operations on the next City Council meeting agenda as new business;

vv) On or about October 6, 2015, Wallis along with a city Planning Commission, suggested getting additional revenue by eliminating Koch and Plaintiff's position;

ww)   On or about October 9, 2015, Wallis came into the office demanding copies of historical documents.  When Plaintiff told him he would need to fill out a public records request, Wallis became irate and refused.  Plaintiff acquiesced in providing him the documents due to his threatening and intimidating tone during the conversation.  Wallis then used the documents to make a false allegation that Plaintiff was misappropriating capital improvement funds;

Page 24—Complaint

xx) On or about October 20, 2015, without City Council authorization, Wallis put a survey on his "Community" Facebook page regarding Plaintiff's hours of operation;

yy) On or about October 22, 2105, Wallis published on his "Community" Facebook page Plaintiff's wages and allowed derogatory comments about them to be posted and maintained on the page. He misstated and inflated her wages. When Koch read the publication and comments to Plaintiff, Plaintiff had a panic attack falling to the floor. The fire department was called to provide medical aid to Plaintiff. Her blood pressure was so elevated that she was instructed she needed to arrange transport to seek medical attention immediately or she would be transported by the department to receive it. Plaintiff was not able to attend the City Council meeting that evening. The public at the meeting had a "mob mentality" shouting hateful comments about Plaintiff. The comments were based upon Wallis false and misleading statements about Plaintiff. Wallis stated at the meeting the Plaintiff was extremely overpaid. Wallis passed out a memorandum to the City Council and public addressing his concerns with current staff, hours, accountability and wages. This turned into an illegal performance review of Plaintiff. Wallis claimed that the money being collected for water and sewer bills was not being budgeted correctly according to local budget law;

zz) On or about October 28, 2015, Councilor Bernard came in to Plaintiff's office and did not say anything. He walked around the counter to where Plaintiff was sitting and pulled her hair back off her shoulder and kissed her twice on the cheek. He then left. Plaintiff reported this unwanted conduct to Councilor Koch;

aaa)    On or about October 29, 2015, Wallis Published on his "Community" Facebook page his wage analysis of Plaintiff's wages and allowed inappropriate comments about Plaintiff to follow and maintained them on the page;

Page 25—Complaint

bbb)    On or about November 3, 2015, in an effort to harass Plaintiff, Wallis told Councilor LaFevre that the auditors called him at home on Saturday concerned because Plaintiff had not finished the audit and was not responding to them.  The auditor did not have this alleged conversation with Wallis and would not call him at home on a Saturday.  The auditor disclosed to Plaintiff that Wallis was digging deep looking for something he could use against Plaintiff;

ccc)    On or about November 3, 2015, Plaintiff had to seek medical care due to a panic attack she had as a result of Wallis' conduct.  When Plaintiff reported this to Councilor Koch, Plaintiff was told she needs to "buck up and take it a little longer;"

ddd)    On or about November 3, 2015, there was a Planning Commission Meeting in the meeting adjacent to Plaintiff's office.  Plaintiff could hear it from her office.  Wallis attended and was heard providing false information about Plaintiff's performance stating she refused to do her job.  The participants at the meeting stated that there is no need for Plaintiff to work long hours and questioning what she did all day.  They agreed with Wallis that Plaintiff's position needed to be eliminated.  During this meeting attendees periodically went over to the door that connected to Plaintiff's office and attempted to watch Plaintiff underneath the door;

eee)    On or about November 5, 2015, Wallis sent an email regarding the city attorney search accusing Plaintiff of being unethical and making an unlawful attempt to influence the selection;

fff) On or about November 10, 2015, Wallis sent an email questioning Plaintiff's ability to do her job;

ggg)    On or about November 10, 2015, Wallis sent an email stating he "will try to keep it simple" so that Plaintiff can understand;

Page 26—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

hhh)   On or about November 11, 2015, Wallis sent an email accusing Plaintiff of "losing" attorney applications or picking and choosing the one she wanted;

iii) On or about December 9, 2015, Wallis posted on his "Community" Facebook page that there was no accountability for staff.  He stated that staff do not even have a timesheet.  He also discussed the outstanding grievance.  He uploaded the inaccurate and inflated payroll document he created that accused Plaintiff of committing fraud, even though she told him in November the information was not accurate;

jjj) At the December 2015 City Council meeting, Wallis introduced a document he prepared; a Timekeeping Resolution to make the staff more accountable.  Plaintiff already used a timeclock and a timesheet;

kkk)   On or about December 11, 2015, Councilor Bernard told Plaintiff, "to just grow a set" in dealing with Wallis.  He made a similar comment to Plaintiff the following week stating that Plaintiff "needed to grow some nads, and get shit done." Councilor Bernard grabbed his crotch and told Plaintiff to get some nice big ones;

lll) In or about January 2016, a work session was scheduled again for the employee grievance only to be cancelled;

mmm) On or about January 31, 2016, Councilor Mike Bernard was in the office to sign checks, and he told Plaintiff again that it appeared Wallis had people out the in community watching staff to see if they can catch them doing something wrong;

nnn)   On or about February 3, 2016, Wallis filed a complaint with the Oregon Government Ethic's Commission ("OGEC") against Councilor Koch, Councilor Joel Halter and Councilor LaFevre stating they participated in an illegal executive session to hire a city attorney. Wallis then went to the media with the complaint.  He then published on his "Community"

Page 27—Complaint

Facebook page that Plaintiff refused to accept the other applicant for the city attorney position and disqualified the person which was not true;

ooo)   On or about February 9, 2016, Plaintiff received a phone call from Councilor LaFevre asking if Plaintiff received her email yet from the OGEC.  She told Plaintiff that a complaint was filed against Plaintiff for abusing her power as the City Recorder and negotiating wage/salary and benefits for herself.  This allegation was untrue and Plaintiff had to seek medical care for the stress that it caused;

ppp)   On or about February 10, 2016, Wallis posted on his "Community" Facebook page that the City Council would be having an Executive Session for the purpose of discussing a staff grievance.  His post led to demeaning and negative comments from the public that he maintained on the page;

qqq)   In or about March 2016, Wallis submitted a document over 15 pages in length in response to the 2015 grievance.  Wallis document contained many false statements about Plaintiff and was an attempt to discredit her;

rrr) On or about March 9, 2016, Wallis made statements during the City Council executive session that he wanted time to provide a rebuttal to Plaintiff's grievance.  He stated that the City Council discussing the grievance was a direct threat to him and his rights were violated. Wallis' comments were directed at Plaintiff and were very hostile in demeanor;

sss)   On or about March 9, 2016, after the City Council meeting, Schroeder told Plaintiff that she needed to put up with Wallis' behaviors because it will make things worse for Plaintiff if she confronts the behaviors;

ttt) On or about March 17, 2016, Plaintiff learned that she had missed a planning meeting and an ODOT traffic study meeting she should have been a part of, because Wallis did not inform her of them.  Wallis' actions made it more difficult for her to perform her job duties;

Page 28—Complaint

uuu)    On or about March 18, 2016, Wallis published a statement on his "Community" Facebook page that if the public wants answers they should follow the money referring to alleged inadequacies in Plaintiff performing her duties as Treasurer;

vvv)    On or about April 5, 2016, Wallis attended a Planning Commission meeting after hours and in earshot of Plaintiff at city hall.  Wallis was involved in a conversation that Plaintiff has nothing to do all day and there was no reason for her to work late.  Wallis made statements that he tried to address it with the City Council and cannot get any support from them to do anything about Plaintiff.  When Plaintiff disclosed these hostile and retaliatory statements to Councilor Bernard,  he responded that Plaintiff needed to "grow a fucking set of balls and confront them;"

www) On or about April 19, 2016, Wallis accused Plaintiff of not appropriately or timely communicating with a customer regarding the customer's questions.  Wallis, without authorization or authority, placed the customer on the agenda so that he could ridicule Plaintiff for alleged deficiencies;

xxx)    Even though Wallis had no authority to supervise or discipline staff or authorize work to be done by Schroeder, on or about April 20, 2016, Wallis sent an email directly to Schroeder where he re-wrote St. Paul's Employee Manual.  His draft included over 20 pages on disciplining staff.  In the email, he stated that he had written Council Rules back in March of 2015 but they were not adopted because of staff.  The rules he drafted were 40 pages of what he called Council Rules and Reorganization of City Operations.  They gave him the sole authority to hire, fire, discipline and investigate employees for any reason he felt was necessary.  His proposed Council Rules had nothing to do with rules for the City Council;

yyy)    On or about May 2, 2016, Wallis posted on his "Community" Facebook page that neither Plaintiff or Koch had received any water complaints in the last few months.  This statement

Page 29—Complaint

was not true and gave the appearance that Plaintiff was not being responsive to the complaints she had received from customers;

zzz)    On or about May 3, 2016, Koch sent the City Council and official complaint about all the illegitimate complaints Wallis was posting on his "Community" page.  Plaintiff sent an email stating that she had the same complaint;

aaaa)   On or about May 13, 2016, Wallis purposely excluded Plaintiff from email chains from a vendor that attended the council meeting.  At the previous City Council meeting, Plaintiff brought up, in relation to this vendor, that Wallis should not be interacting with him in the manner he was, because Wallis had no spending authority;

bbbb)   On or about May 15, 2016, Wallis changed his Facebook page, from City of St. Paul, Mayor's Forum to Our St. Paul Community City of St. Paul.  He posted that, per the advice of the city attorney, he had changed the name of the forum.  He explained that he started the page to share information and foster discussion and that is still his goal.  He stated it is not an official page and everyone else will have more freedom to speak frankly about community issues and posts will still be moderated by him. Wallis posted that anyone can join the page. Wallis has since banned Plaintiff and Koch from the page;

cccc)   On or about May 17, 2016, Councilor Koch and LaFevre instructed Plaintiff to contact the Rodeo Association and Sheriff's Office to arrange for schedule coverage over the 4th of July.  This is part of Plaintiff's job duties.  Wallis replied to the email with an upset tone stating "no" and that he would be contacting them.  Wallis did this even though he has no authority to change Plaintiff's job duties;

dddd)   On or about May 18, 2016, Plaintiff asked the City Council to take action against Wallis because he is making public derogatory statements about staff and making negative false statements about Plaintiff;

Page 30—Complaint

eeee)  On or about May 20, 2016, Wallis published a Facebook posting with misleading and untrue facts leading to the community posting disparaging comments about Plaintiff and Koch on his "Community" Facebook page;

ffff)    On or about June 2, 2016, Wallis questioned Plaintiff about contacting Schroeder stating Plaintiff should not do it without City Council approval.  Part of her job duties are supposed to be dialoguing with Schroeder;

gggg)  On or about June 2, 2016, Wallis emailed Schroeder without including Plaintiff.  St. Paul's policy is that everything is to go through Plaintiff to the city attorney;

hhhh)  On or about June 8, 2016 during the City Council meeting, the public were allowed to make disparaging comments about Plaintiff and yell at her.  The comments were a reaction to, and consistent with, false statements published by Wallis about Plaintiff on his "Community" Facebook page.  Wallis took no action to gain control of the meeting and stop the disparaging false statements about Plaintiff.  After Schroeder told Wallis repeatedly that he needed to get the meeting in order and the attack on Plaintiff needed to stop, Wallis stated that the public's concerns raised should be allowed, because they were legitimate questions and Plaintiff should have to answer them;

iiii)  After the June 8, 2016 City Council meeting, Councilor Bernard came up to Plaintiff in front of the public and council and kissed her on the cheek.  The City Council took no action to stop Councilor Bernard's conduct and made no statements directing him not to kiss Plaintiff in the future.  When Plaintiff complained about Councilor Bernard's sexually harassing conduct in the past, the City Council has taken no action to stop the conduct from occurring;

jjjj)  On or about July 1, 2016, Councilor Bernard came in the office to sign checks and with no warning kissed Plaintiff.  Plaintiff complained about this harassing conduct to Councilor LaFevre who simply responded that Councilor Bernard means well.  Upon information and

Page 31—Complaint

belief, St. Paul took no action to investigate Plaintiff's complaint and no corrective action was taken;

kkkk) On or about July 12, 2016, Wallis sent an email requesting an executive session, for the purpose of discussing litigation or litigation likely to be filed referring to Plaintiff's claims;

llll) In or about July 2016, Plaintiff made a request to Schroeder that Plaintiff be able to meet with the City Council in executive session to notify them of, and discuss, her worker's compensation stress claim.  Schroeder replied and carbon copied Wallis thus disclosing Plaintiff's stress claim to Wallis.  The City Council did not allow Plaintiff to attend their executive session and during the session they discussed Plaintiff's medical information;

mmmm) On or about July 22, 2016, Wallis published on his "Community" Facebook page that the new security door to City Hall was $6,000.00 which was double the cost.  This post caused the public to make disparaging remarks about Plaintiff;

nnnn) On or about August 2, 2016, there was another Planning Commission meeting within ear shot of Plaintiff. Wallis and another participant were early and they made fun of Plaintiff making comments/jokes about being careful of what they say they as they do not want to be accused of attacking her. Wallis stated at the meeting that Plaintiff did not know what she was doing with the school project and it was Plaintiff's fault the permits were not being processed.  Wallis stated that Plaintiff had not done her job and it was a mess because of Plaintiff which was a false statement;

oooo) On or about August 18, 2016, Wallis published on his "Community" Facebook page that staff had finally released permits for the school's construction communicating that staff caused the project to be 120 days behind schedule which was untrue;

Page 32—Complaint

pppp)  On or about August 24, 2016 Wallis published on his "Community" Facebook page that staff have no accountability so they do whatever they want and take advantage of their positions;

qqqq)  On or about August 31, 2016, Wallis had the Newberg Graphic publish a story regarding the school bond project.  Wallis was quoted in the article stating that the project was delayed "due to confusion on building permits" and the tone of the article was that Plaintiff was overwhelmed by the project which was untrue;

rrrr)    On or about September 7, 2016, Wallis published on his "Community" Facebook page statements leading to allegations against Plaintiff of nepotism.  Rather than stopping the conversation as the moderator, Wallis instead posted the OGEC letter of opinion from June 2015 when Wallis accused Plaintiff of nepotism.  In Wallis' posts he published on the page that through an initiative of the voters they can call for tighter restrictions on who can run for office and who can be employed by the city;

ssss)    On or about September 8, 2016 at the City Council meeting, Wallis brought up a complaint email he received from Gary Allen with the Newberg Graphic about Plaintiff allegedly failing to timely respond to a public records request.  This was and led to an impermissible evaluation of Plaintiff's job performance at a public meeting without giving Plaintiff the opportunity to hear allegations being made against her in an executive session. The total turnaround time for their public records request was 2.5 days;

tttt)On or about September 10, 2016, Wallis published on his "Community" Facebook page that Plaintiff did not have a set schedule, that the office is never open, and that Plaintiff is never available or responsive to customer needs.  Wallis further published that there are reasons to believe there has been fraud.  Wallis published he wanted to take away Plaintiff's job by

Page 33—Complaint

hiring a full-time City Treasurer.  Wallis made accusations that Plaintiff was holding up the school permits.

uuuu)  On or about September 23, 2016, Wallis published on his "Community" Facebook page an excerpt from the June 2016 Council minutes about water quality, stating he suggested that staff bring recommendations back to the City Council for a work session but staff did not follow through.  Wallis statement was false and caused the public to believe Plaintiff was not doing her job.  The public made defamatory and derogatory comments towards Plaintiff due to Wallis' statements;

vvvv)  On or about October 7, 2016, Wallis published on his "Community" Facebook page that Plaintiff was to blame for a City Council meeting and agenda change;

wwww)       Wallis went to individuals in the community and provided false evidence to them that Plaintiff was not doing her job in order to generate hostility towards Plaintiff;

xxxx)  On or about November 2, 2016, Schroeder sent an email to the City Council in response to Plaintiff's complaints about conduct and outbursts at the meeting.  In retaliation for Plaintiff's complaint and Schroeder's response, Wallis sent Plaintiff an email demanding to know who authorized Schroeder to do the work involved in sending the email;

yyyy)  On or about November 15, 2016, KPTV Channel 12 ran a news story on St. Paul's water issues. Wallis sent an email stating all inquiries needed to go through him or Schroeder and to not make any comments if anyone asked about it;

zzzz)  On or about November 15, 2016, Plaintiff sent an email requesting to use vacation time over the holiday.  Councilor Koch approved the leave. Wallis became upset and stated Councilor Koch had no authority to approve it and that any decision would have to made at a City Council meeting which would occur during a public meeting where constituents could comment;

Page 34—Complaint

Law Office of Larry L. Linder, LLC
3000 Market Street NE, Suite 150
Salem, OR 97301
(T)(503)585-1804 (f) (503)585-1834
info@salememploymentlawyer.com

aaaaa) During December 2016, Wallis excluded Plaintiff from meetings with parties from outside St. Paul on matters that Plaintiff should have been involved in given her job duties as Treasurer. At the meetings, Wallis made statements that he did not want Plaintiff involved;

bbbbb) On or about September 7, 2016, Wallis published on his "Community" Facebook page a statement post that sparked a heated attack against Plaintiff regarding nepotism and Plaintiff's relationship with Councilor LaFevre;

ccccc) On or about September 10, 2016, Wallis posted a memorandum on his "Community" Facebook page, titled, "What it means to be Mayor." He implied that Plaintiff did not have a set schedule, that the office was never open, that Plaintiff was never available or responsive to customer needs, and that there were reasons to believe Plaintiff had committed fraud. Wallis reported Plaintiff was doing many things wrong, including mishandling of city funds and the city's books, and threatened "that he needs to make sure there is change coming down the line;"

ddddd) On or about September 23, 2016, Wallis posted an excerpt from the June 2016 City Council minutes about water quality, stating that staff were to bring recommendations back to the City Council for a work session, and but that staff did not follow through. Wallis' statements were false and caused public hostility towards Plaintiff;

eeeee) On or about September 30, 2016, Wallis posted misleading facts on his "Community" Facebook page blaming staff for water quality issues;

fffff)   On or about October 4, 2016, Wallis posted information on his Facebook page that was false and misleading regarding Plaintiff. Plaintiff sent a request to the City Council via email asking them to address Wallis' misleading information, because Wallis was violating St. Paul's Social Media Policy. Wallis' false statements caused the public to come in the office

Page 35—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

and attack Plaintiff, because they believed the mistruths. The City Council ignored Plaintiff's complaint and did nothing;

ggggg) On or about October 6, 2016, Schroeder did nothing about Councilor Koch taking Plaintiff's payroll record and, in her billing notes to the city, stated it was justified;

hhhhh) On or about October 5, 2016, Koch told Plaintiff that he just talked to customer Kimber Matheson, who stated that the public was attacking Plaintiff, alleging that she was ruining the city;

iiiii) On or about October 6, 2016, Wallis retaliated against Plaintiff and blocked her from his "community" Facebook page, stating until the issue (her grievance regarding whistleblowing and discrimination) was resolved, and that he was blocking Plaintiff from the page. Plaintiff remained blocked throughout the duration of her employment. Wallis used this page to publish false statements about Plaintiff, causing public backlash against Plaintiff;

jjjjj) On or about October 6, 2016, in retaliation for Plaintiff complaining about him violating the social media policy, Wallis posted on his Facebook page a request for people to contact him personally at his city email mayor@stpaultel.com or on Facebook with concerns, comments, issues, or if they just want someone to listen to their issues (implying that staff do not listen);

kkkkk) On or about October 7, 2016, Wallis posted on Facebook and blamed Plaintiff for a meeting and agenda change. It quickly turned into a mob mentality with hostile comments and bashing Plaintiff as an employee. Wallis allowed it to continue on his "Community" Facebook page;

lllll) On or about October 18, 2016, after Plaintiff complained about Wallis' conduct at a City Council meeting, Wallis made an announcement that he was going to allow the public to make comments. One of the residents, Tracy Fleck, verbally attacked Plaintiff based upon

Page 36—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

mistruths Wallis had spread, and Wallis allowed the conversation to get out of control, even after Schroeder warned him that he was required to maintain order;

mmmmm)     On or about October 18, 2016, Wallis denied Plaintiff the opportunity to meet with the City Council regarding her unresolved staff grievance that was filed in 2015. He stated the City Council had more pressing matters to deal with. This was a consistent message by Wallis that continued until Plaintiff's termination;

nnnnn) On or about October 20, 2016, when Plaintiff expressed complaints about Wallis to Councilor Bernard, Councilor Bernard motioned like he was masturbating and told Plaintiff that he did not care;

ooooo) On or about November 2, 2016, Wallis sent Plaintiff an email questioning her job performance and stating that she better fix the alleged problem;

ppppp) On or about November 2, 2016, Wallis was upset that Schroeder wrote a memorandum to the City Council regarding his failure to maintain order and decorum during City Council meetings after Plaintiff's complaint to Schroeder. In retaliation for Plaintiff contacting Schroeder about Wallis' failure to comply with the City Charter, Wallis sent Plaintiff an email demanding that she tell him who authorized Schroeder to write the memorandum;

qqqqq) On or about November 4, 2016, Wallis retaliated against Plaintiff by directing her to put on the agenda an evaluation of her employment;

rrrrr)   On or about November 4, 2016, Wallis directed Plaintiff to provide him with copies of Schroeder's bills. Schroeder directed Plaintiff not to provide copies of the bills to Wallis, and that Wallis could review the bills in Schroeder's office. Wallis became angry with Plaintiff and abruptly left Plaintiff's office;

Page 37—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

sssss) On or about November 21, 2016, Plaintiff received an email from Michelle Bilberry ("Bilberry") notifying her that Wallis had excluded her from a meeting regarding a project that she was assigned to;

ttttt) On or about November 23, 2016, Wallis publicly suggested that Plaintiff was incompetent at her job when he posted on his "Community" Facebook page that he was bringing in experts from other cities to determine what was wrong with St. Paul's system;

uuuuu) On or about December 6, 2016, Bilberry telephoned Plaintiff asking why she had not been involved with several meetings between Wallis and the Governor's Office regarding finances and grant options for St. Paul's water system. Plaintiff had not been informed of the meetings. Bilberry reported that Wallis suggested that he did not want Plaintiff in the meetings. Bilberry also reported that Wallis made negative comments during the meetings about St. Paul's employees;

vvvvv) On or about December 28, 2016, the City Council held an executive meeting and discussed Plaintiff's tort claims notice. After the meeting, Koch forwarded Plaintiff an email from Schroeder directing Koch to not talk about anything that he heard in the public meeting in which Plaintiff's tort claims notice was discussed;

wwwww) On or about December 29, 2016, Schroeder demanded that Koch give her the city recorder so she could destroy the recording of the discussion regarding Plaintiff's tort claim. After Koch told Schroeder that he did not feel he could hand over a public document knowing the intent was to destroy a public record and there was no recording, Schroeder sent Plaintiff an email that accused her of listening to the executive session;

xxxxx) On or about January 3, 2017, Schroeder demanded that Plaintiff give her the city recorder and accused Plaintiff of altering and/or destroying public records;

Page 38—Complaint

yyyyy) On or about January 5, 2017, Schroeder again demanded that Plaintiff give her the city recorder. Plaintiff told Schroeder that she could not let the city recorder leave the office unless the City Council approved it. Schroeder then threatened that she would obtain a forensic analysis of the recorder to prove that Plaintiff had destroyed the file;

zzzzz) On or about January 1, 2017, Schroeder included retaliatory comments in her billing statement, which included, but were not limited to, that she called Plaintiff and Plaintiff did not answer and that she received no follow up from Plaintiff;

aaaaaa)On or about January 4, 2017, Schroeder and Wallis took over aspects of Plaintiff's job duties and excluded her participation and involvement;

bbbbbb)    On or about January 16, 2017, Councilor Waldo told Plaintiff that Schroeder directed him to obtain a copy of Plaintiff's personnel file. Waldo said he was told to obtain it due to personnel issues;

cccccc)On or about January 25, 2017, Councilor Koch informed Plaintiff that the City Council was leveling accusations against Plaintiff in private conversations. Councilor Koch told Plaintiff that she needed to be careful about who she trusted at work;

dddddd)    On or about January 26, 2017, Schroeder sent Councilor Waldo to Plaintiff's office to demand that Plaintiff relinquish her keys to all city properties;

eeeeee)On or about January 31, 2017, Wallis sent Schroeder a rendition of his own minutes from a recent City Council meeting regarding Schroeder's bills. In his email to Schroeder, Wallis attempted to discredit Plaintiff's complaints about the need to reconcile Schroeder's bills;

ffffff)  On or about February 1, 2017, Schroeder attacked Plaintiff for allegedly not doing her job and asserted that all credits to the city had been received regarding the reconciliation of the attorney bills;

Page 39—Complaint

gggggg)    On or about February 2, 2017, a contractor told Plaintiff that Wallis called the contractor regularly to check on Plaintiff. The contractor told Plaintiff that Wallis kept information away from Plaintiff and excluded her from meetings that she should be involved in due to her job responsibilities;

hhhhhh)    On or about February 2, 2017, Schroeder sent an email advising Plaintiff and others that her bills were protected by attorney-client privilege and should not be discussed in City Council meetings;

iiiiii)    On or about February 2, 2017, Wallis sent an email to the City Council stating that Plaintiff had misrepresented the issue regarding the need to reconcile Schroeder's bills;

jjjjjj)    On or about February 14, 2017, Wallis proposed that the City Council eliminate half of Plaintiff's job and make her a half time employee. In an email to Plaintiff, Wallis threatened to separate Plaintiff from her job. When Plaintiff questioned Wallis about his proposal, he ignored Plaintiff;

kkkkkk)    On or about February 10, 2017, Wallis complained to the City Council and Schroeder that Plaintiff was not completing tasks in a timely manner;

llllll)    On or about February 16, 2017, Plaintiff walked in just prior to the commencement of the City Council meeting. Plaintiff's name placard had been moved from the Council table (where she regularly sat during City Council meetings) to the back of the room;

mmmmmm)    On or about February 16, 2017, Wallis stated in a public City Council meeting that "quite frankly" it should not have taken Plaintiff so long to reconcile Schroeder's bills. Schroeder's bills lacked specificity and contained a large amount of billing for unauthorized work per the St. Paul's Charter;

nnnnnn)    On or about February 16, 2017, Councilor Koch acknowledged that Wallis was violating the City Charter by attempting to strip Plaintiff of her job duties, which were

Page 40—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

assigned under the Charter, and that Wallis was interfering with the performance of Plaintiff's job. The City Council took no action to remedy Wallis' conduct;

oooooo) On or about February 16, 2017, Schroeder sent a memorandum that advised that staff must relinquish their keys to city buildings, and that staff can no longer have any communication with CIS;

pppppp) On or about February 17, 2017, Councilor Waldo decided to have Wallis help reconcile Schroeder's bills, many of which Wallis authorized Schroeder to incur in violation of the Charter;

qqqqqq) On or about February 17, 2017, Councilor Waldo threatened Plaintiff by telling her that once attorneys get involved (in response to her hiring private legal counsel and sending a tort claims notice) it changes things, and she should resign her employment;

rrrrrr) On or about March 9, 2017, Schroeder approached Plaintiff at the City Council meeting and asked how Plaintiff liked sitting in the back of the room, referring to Plaintiff's removal from the City Council table after eleven years. Schroeder's demeanor was threatening. Plaintiff responded that it was not her choice, and Schroeder then stated that it was for the best;

ssssss) On or about March 9, 2017, Schroeder refused to answer questions at the City Council meeting, citing attorney-client privilege, regarding why her office was charging money to review a resolution provided by Wallis when Plaintiff completed one that the city had used for years;

tttttt) On or about March 9, 2017 at the City Council meeting, Councilor Dolan publicly demeaned Plaintiff by stating that Plaintiff's quote regarding a new water and sewer hookup was in error, which was false. When Plaintiff stated that the quote was per the city ordinance, Councilor Dolan told Plaintiff that she was wrong;

Page 41—Complaint

Law Office of Larry L. Linder, LLC
3000 Market Street NE, Suite 150
Salem, OR 97301
(T)(503)585-1804 (F) (503)585-1834
info@salememploymentlawyer.com

uuuuuu)    On or about March 21, 2017, Councilor Waldo asked Plaintiff for copies of all of her accrued time off, sick time, and vacation time, stating that Schroeder wanted it because they were looking into things;

vvvvvv)    On or about March 23, 2017, Schroeder retaliated regarding Plaintiff's complaints about her unauthorized legal fees by writing a recommendation that Plaintiff no longer be able to communicate with Schroeder's office;

wwwwww)    On or about March 29, 2017, in an attempt to limit information to the City Council, Schroeder stated that the City Council could not contact CIS. This was another attempt by Wallis and Schroeder to cover up their misdeeds;

xxxxxx)    On or about April 19, 2017, in response to Plaintiff requesting use of her accumulated vacation, Councilor Waldo questioned how Plaintiff would complete her work tasks;

yyyyyy)    On or about April 21, 2017, when Plaintiff told Councilor Halter that she believed that Schroeder's bills were possibly fraudulent, he became angry with Plaintiff and stated he would not speak about it;

zzzzzz)On or about April 28, 2017, Councilor Halter stated he would not speak to Plaintiff regarding Schroeder's unauthorized legal bills;

aaaaaaa)    On or about April 1, 2017, Wallis and Schroeder sent Plaintiff and the City Council an email reminding Plaintiff that she was an at-will employee and that they were looking at ways of removing Plaintiff from her position to make "the claim" go away;

bbbbbbb)    On or about May 9, 2017, after Wallis and Schroeder removed Plaintiff's job duty of reconciling Schroeder's bills, Wallis sent Plaintiff his reconciliation of the bills. Wallis had no authority under the Charter to reconcile the bills;

Page 42—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

ccccccc)    On or about May 18, 2017, Councilor Waldo told Plaintiff that the problems with Wallis were not going to get any better and she should resign her employment;

ddddddd)    On or about May 23, 2017, at a budget meeting, Wallis and Schroeder informed Plaintiff that she needed to add money to the budget for hiring someone to take over part of Plaintiff's job duties at three times Plaintiff's hourly rate;

eeeeeee)    On or about May 24, 2017, in response to Plaintiff stating Wallis was continuing to overstep his authority, Councilor Waldo asked Plaintiff personal questions regarding the relationship with her then attorney. He told Plaintiff that Wallis and Schroeder were "gunning" for her. He stated that Plaintiff should resign her employment;

fffffff) On or about May 30, 2017, Councilor Dolan criticized Plaintiff for how the attorney bills were handled, even though the duties were taken away from her in violation of St. Paul's Charter;

ggggggg)    On or about May 30, 2017, Councilor Koch confirmed during the City Council meeting that the City Council was violating the law by not allowing Plaintiff to do her job and by violating St. Paul's Charter;

hhhhhhh)    On or about May 30, 2017, Wallis retaliated against Plaintiff by blaming staff for Schroeder's high bills due to "personnel issues," referring to Plaintiff placing St. Paul on notice of her legal claims;

iiiiiii)  On or about June 8, 2017, at the City Council meeting, in response to Plaintiff stating Schroeder charged St. Paul for work her office had not completed, Schroeder shouted across the room and accused Plaintiff of misplacing the work, even though Schroeder's office staff then confirmed that the work had not been completed;

jjjjjjj)  On or about June 8, 2017 at the City Council meeting, Schroeder berated Plaintiff, stating that she was wrong when she raised issues that Schroeder failed to present evidence on work

Page 43—Complaint

charged for and paid by St. Paul. Schroeder then requested authorization to spend more legal fees to hire a new city manager, which would take away more of Plaintiff's job duties;

kkkkkkk)    On or about June 9, 2017, Plaintiff filed a complaint with the City Council regarding Schroeder verbally berating Plaintiff at the City Council meeting the prior evening. The City Council ignored the complaint;

lllllll)  On or about June 9, 2017, Councilor Dolan sent Plaintiff an email that directed her to leave Wallis' unlawful expenditures alone, and provided her with a cash receipt for money Councilor Dolan paid for Wallis' expenditure to his business;

mmmmmmm) On or about June 13, 2017, Wallis sent Plaintiff his inaccurate and incomplete rendition of a reconciliation of Schroeder's bills;

nnnnnnn)    Schroeder made a practice of stating negative remarks about Plaintiff in her attorney fee invoices;

ooooooo)    On or about June 14, 2017, Wallis went on the record in a newspaper article and stated that the reason the city was hiring a city manager was due to personnel issues, referring to Plaintiff's legal claims;

ppppppp)    On or about June 15, 2017, Wallis ridiculed Plaintiff via email for allowing City Council members the opportunity to add items to the agenda;

qqqqqqq)    On or about June 20, 2017, Plaintiff learned that Wallis excluded her from a meeting with a contractor regarding a project that she had been working on since 2009. Wallis had no authority to hold the meeting and/or to exclude Plaintiff;

rrrrrrr) On or about June 20, 2017, a belligerent customer entered the city office and yelled at Plaintiff in response to negative information that Wallis posted on his "Community" Facebook page about her;

Page 44—Complaint

sssssss)        On or about June 20, 2017, Plaintiff expressed to Councilor Waldo that she was uncomfortable signing a check for Schroeder's legal bill, because some of the bill covered work not yet received and some work that related to Plaintiff's tort claims notice, which Plaintiff could not verify as completed. Councilor Waldo threatened to call Wallis and attempted to intimidate Plaintiff by stating that Wallis complains about Plaintiff. During this conversation, Councilor Waldo told Plaintiff she should resign her employment;

ttttttt)  On or about June 27, 2017, Councilor Koch told Plaintiff that Councilor Dolan prepared and delivered to each councilor's doorstep a document he created stating that Plaintiff was 95% responsible for Schroeder running up over $33,000.00 in legal bills;

uuuuuuu)        On or about June 27, 2017, in response to Plaintiff stating she needed to leave work and have time off due to the harassment and retaliation, Councilor Waldo directed Plaintiff that she needed to stay at work and finish assignments. Plaintiff had an open worker's compensation claim that authorized her to leave work due to the stress;

vvvvvvv)        On or about June 30, 2017, Wallis posted on his "Community" Facebook page that Plaintiff was out on sick leave;

wwwwwww)  On or about July 3, 2017, Plaintiff went to the city office before notifying City Council she was taking leave under her worker's compensation claim. Upon her arrival, she found the front door unlocked and a locksmith replacing locks. Plaintiff learned that Councilor Waldo and Wallis had broke into the city office and changed the locks to lock the city employees out;

xxxxxxx)        On or about July 4, 2017, Wallis posted on his "Community" Facebook page regarding Plaintiff calling in sick;

yyyyyyy)        On or about July 7, 2017, Wallis posted on his "Community" Facebook page that the city office was closed, because Plaintiff was gone due to personnel issues;

Page 45—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

zzzzzzz)     On or about July 14, 2017, there was a newspaper article in both the Newberg Graphic and Woodburn Independent in which Wallis made negative statements about Plaintiff calling in sick during the most important event of the year. Plaintiff's leave was authorized as worker's compensation leave;

aaaaaaaa)     On or about July 13, 2017, upon learning from Councilor Waldo that Plaintiff filed a complaint against him, Wallis posted the defamatory newspaper article on his "Community" Facebook page;

bbbbbbbb)     On or about July 20, 2017, at the City Council meeting, Wallis accused Plaintiff of not doing her job, not paying the bills, not completing the city auditor request, and failing to timely file necessary forms. The forms were not filed by Plaintiff during a time that she was on worker's compensation leave;

cccccccc)     On or about July 21, 2017, Wallis was quoted in the Newberg Graphic stating that Plaintiff failed to file necessary forms with the state, checks were not mailed out, and accounts were past due. These issues arose while Plaintiff was on worker's compensation leave;

dddddddd)     On or about July 24, 2017, Plaintiff met with Councilors Waldo and Halter regarding her return to work. Plaintiff was presented with a letter from Wallis that had not been reviewed or approved by the City Council. Councilor Waldo told Plaintiff that things were not going to get better for her;

eeeeeeee)     On or about July 26, 2017, Wallis posted on his "Community" Facebook page that the digital recorder went missing before July 3, 2017, that the locks were not drilled out, and staff was not locked out. The information posted was false and implied that Koch or Plaintiff stole the recorder;

Page 46—Complaint

ffffffff)On or about July 28, 2017, Wallis was quoted in a newspaper article stating that Plaintiff had been out on medical leave, was not doing her job properly, and blamed St. Paul's dysfunction on staff;

gggggggg)    On or about August 2, 2017, Wallis was again quoted in a newspaper article placing Plaintiff in a false light;

hhhhhhhh)    On or about August 3, 2017, Plaintiff received an email from Councilor Koch that Councilor Waldo stepped down as administrative liaison and Wallis appointed himself for the position. Wallis did not have the authority to appoint himself to that position;

iiiiiiii) On or about August 4, 2017, Councilor Koch told Plaintiff that Wallis was coming after Plaintiff;

jjjjjjjj) In or about August 2017, Schroeder stated in her invoice to St. Paul that Plaintiff did not do her job by failing to send out a City Council meeting agenda. Wallis had instructed Plaintiff not to send it out;

kkkkkkkk)    On or about August 8, 2017, Councilor Koch told Plaintiff that Wallis was watching everything that Plaintiff did and Plaintiff needed to keep a detailed activity log;

llllllll) On or about August 22, 2017, Wallis came to the city office demanding that Plaintiff sign a contract to hire McDonald as Human Resources Consultant. Plaintiff stated she could not sign the contract binding St. Paul when the City Council had not seen or approved it as required by city policy. Wallis became angry and argumentative with Plaintiff;

mmmmmmmm)        On or about August 22, 2017, Plaintiff received and email from Schroeder stating Plaintiff refused to sign the contract in violation of a directive. Schroeder had provided legal services on the contract without City Council approval;

nnnnnnnn)    On or about August 25, 2017, Councilor Koch came to the office and provided Plaintiff a sticky note that read, "Be careful with conversations or what you talk about in the

Page 47—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

city office." She then stated to Plaintiff that Wallis and Schroeder were getting more aggressive in coming after Plaintiff;

oooooooo)    At the September 14, 2017 City Council meeting, in response to Plaintiff complaining about unauthorized and excessive attorney bills, Wallis responded to Plaintiff and asked her how much of the attorney bill was for personnel issues, referring to Plaintiff's tort claims notice;

pppppppp)    On or about September 14, 2017, Plaintiff asked for the return of her key to the hall, which she had provided to Councilor Waldo when she went on worker's compensation leave. Councilor Waldo and Wallis both stated they did not have the key. Plaintiff asked Lee Koch to make a copy of his key, a request authorized under Plaintiff's spending authority. The locksmith told Lee Koch that Wallis instructed him not do any work for the city without Wallis' consent. Wallis had no spending authority or authority to do this;

qqqqqqqq)    On or about September 22, 2017, Wallis sent an email to Councilor Koch stating that she could no longer have interactions with Plaintiff. He also told her that he and members of the community were watching her and documenting any times she came into the office to speak to Plaintiff. He told her that if she needed to speak with staff, she needed to arrive with another councilor;

rrrrrrrr)On or about September 28, 2017, Councilor Koch told Plaintiff that Plaintiff was being watched constantly;

ssssssss)    On or about September 28, 2017, Wallis responded to an email that Plaintiff sent regarding a project a contractor was performing for St. Paul. Wallis stated that Plaintiff was factually wrong when she was not;

tttttttt)  On or about October 13, 2017, Plaintiff met with St. Paul's Human Resources consultant, McDonald. Wallis set the meeting. Plaintiff was told the meeting was to discuss findings

Page 48—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

from the sexual harassment investigation. Upon arriving at the meeting, McDonald told Plaintiff that she was specifically told not to address the findings or the investigation. Instead, she was there to discuss performance concerns that the City Council had regarding Plaintiff not living up to their standards. During this meeting, McDonald asked Plaintiff what Plaintiff could do to make it a better environment so everyone could get along. McDonald asked Plaintiff if she wanted to be fired;

uuuuuuuu)     On or about October 16, 2017, Plaintiff met with McDonald. McDonald wanted to follow up on a list of tasks Plaintiff had been provided by Wallis. The list included writing Plaintiff's position description and a how to manual for her job. McDonald stated that the list was generated from a City Council meeting. Councilor Koch knew nothing about the list;

vvvvvvvv)     On or about October 17, 2017, Plaintiff saw that Wallis was standing outside in a vacant lot under Maple trees watching her in the office at 6:30 pm.

wwwwwwww)     On or about October 18, 2017, Plaintiff went out on worker's compensation leave. Plaintiff's doctor reported to her that Wallis contacted her directly to discuss Plaintiff's medical issues;

xxxxxxxx)     On or about October 23, 2017, while Plaintiff was on worker's compensation leave, Wallis stated in a City Council meeting that Plaintiff was not performing her job. At the same meeting, Wallis brought up Plaintiff's wages and falsely stated she was making $6.00 per hour more than she was;

yyyyyyyy)     On or about October 25, 2017, while on worker's compensation leave, Plaintiff received a letter demanding that Plaintiff turn in her keys. Wallis called Plaintiff's house and spoke to her daughter and instructed that Plaintiff turn in her keys by 10:00 am the following morning;

Page 49—Complaint

zzzzzzzz)    On or about October 26, 2017, Wallis threatened that Plaintiff needed to turn in her keys or he was going to use Schroeder to take further action. St. Paul had no need for Plaintiff to immediately return her keys;

aaaaaaaaa)    On or about October 26, 2017, after Plaintiff turned in her keys and passwords, Wallis accessed Plaintiff's email account and locked her out by changing the password.

bbbbbbbbb)    On or about October 31, 2017, Plaintiff notified CIS that her leave was extended by her doctor until November 15, 2017. CIS responded to Plaintiff on November 8, 2017, stating that her doctor, who was pre-approved by CIS, was not a Providence MCO provider. Plaintiff was informed that CIS would not reimburse Plaintiff's doctor for services rendered more than seven days after the letter and Plaintiff's time loss benefits would stop. Plaintiff was instructed that she had to find a new provider. CIS knew that Plaintiff previously was unable to find a Providence MCO provider, which is the reason that CIS helped her find and approved her current provider. Upon information and belief, this action was taken in concert with, and at the request of, St. Paul in an effort to end Plaintiff's employment.

ccccccccc)    On or about November 15, 2017, Plaintiff notified CIS that her leave was extended by her doctor until November 30, 2017. Plaintiff was unable to find a Providence MCO provider and therefore her time loss payments were stopped on November 15, 2017. Upon information and belief, this action was taken in concert with, and at the request of, St. Paul in an effort to end Plaintiff's employment.

ddddddddd)    On or about November 21, 2017, Wallis sent Plaintiff a letter, stating in pertinent part, "Given CIS' exhaustion of your time loss benefits under your worker's compensation claim, the City is writing to notify you that as of November 13, 2017, any absence(s) from work will be charged to any accrued sick leave, and if/when that leave is exhausted then to accrued vacation leave." Wallis misstated Plaintiff's sick leave and vacation leave in the

Page 50—Complaint

letter. He then stated that her sick leave was capped at 160 hours per city policy, and he was going to bring up her excess accrual to the city council for discussion.

eeeeeeeee)    On or about November 30, 2017, Plaintiff notified St. Paul and CIS that her leave was extended by her doctor until December 22, 2017. On or about December 8, 2017, St. Paul sent Plaintiff a letter via regular mail. While St. Paul stated in the caption that it was sent via certified and first class mail, Plaintiff never received a certified letter notice. The letter stated that St. Paul had concluded an audit of her sick and vacation leave and that St. Paul determined Plaintiff should have less than what was previously reported to Plaintiff. St. Paul stated that Plaintiff's leave would run out on December 12, 2017, and she would be required to report to work on December 13, 2017, or petition the City Council for personal leave not to exceed 60 days. The letter further stated that if Plaintiff failed to return on December 13, 2017, or petition the City Council by December 15, 2017, the City Council would conclude Plaintiff voluntarily resigned.

fffffffff)    On or about December 12, 2017, Plaintiff notified Wallis that she was unable to meet St. Paul's return to work requirement by providing a doctor's note releasing her to return to work. Plaintiff requested unpaid leave through December 22, 2017, as her doctor had her on leave through that date. Wallis replied that the City Council could not address her request until December 18, 2017. He stated that St. Paul would hold "any personnel action(s) in abeyance until the meeting."

ggggggggg)    On or about December 19, 2017, St. Paul sent Plaintiff a letter stating that her request for leave through December 22, 2017, was granted and she could have her leave extended until January 19, 2018. On or about December 25, 2017, Plaintiff notified St. Paul she would be taking the leave until January 19, 2018, unless her doctor returns her to work earlier.

Page 51—Complaint

hhhhhhhhh)    On or about January 4, 2018, Plaintiff sent St. Paul an updated doctor's note and informed them that CIS was now allowing Plaintiff to see her doctor regarding her worker's compensation claim, as they could not find her a different provider, and the time loss should revert back to worker's compensation leave. The new doctor's note placed her on leave until January 24, 2018.

iiiiiiiii)    On or about January 24, 2018, Plaintiff notified St. Paul that she was released to return to work. She asked for information on how St. Paul wanted to facilitate Plaintiff getting her keys so she could return on Friday, January 26, 2018. The following day, Plaintiff received an email from Wallis stating that the City Council needed to meet prior to responding to her request to return to work and she could not return on January 26, 2018.

jjjjjjjjj)    On or about January 26, 2018, Wallis called Plaintiff and told her that the City Council met, that the city went through a restructuring, they no longer had a job for Plaintiff, and her employment was terminated.

kkkkkkkkk)    On or about January 26, 2018, St. Paul sent Plaintiff a termination letter, which stated that her last day of employment was December 12, 2017. Upon information and belief, St. Paul did this to avoid paying Plaintiff an additional time loss payment via CIS.

lllllllll)    On or about February 5, 2018, Plaintiff arrived home and observed personal items from her work that someone left in her driveway with no communication. Some of her personal items at work were not returned.

## FIRST CLAIM AGAINST ST. PAUL:  VIOLATION OF WHISTLEBLOWING LAWS

### (Count I—Violation of ORS 659A.199)

9.

Plaintiff realleges paragraph 1-9. According to ORS 659A.199, "It is an unlawful employment practice for an employer to discharge, demote, suspend, or in any manner

Page 52—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule

 or regulation."

10.

St. Paul is an employer pursuant to ORS 659A.199.

11.

Plaintiff made complaints as alleged above that Plaintiff reasonably believed were evidence of violations of state or federal law, rule or regulation.

12.

Plaintiff was retaliated against for engaging in this protected activity as alleged above. The actions of St. Paul constitute a violation of ORS 659A.199.

13.

As a result of St. Paul's unlawful employment actions, Plaintiff suffered and continues to suffer humiliation, anxiety, distress, and impairment of Plaintiff's personal dignity and right to be free from discrimination or interference with Plaintiff's statutory rights. Plaintiff has also suffered, and continues to suffer, economic damages, including, but not limited to, past and future wages, past and future benefits, and other expenses.

14.

Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

///

Page 53—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

15.

Plaintiff is entitled to equitable relief including, but not limited to, an award of back pay, lost benefits, future lost earnings and benefits, and other compensatory damages for future pecuniary losses.

16.

Plaintiff requests a declaration by this Court that St. Paul violated ORS 659A.199.

17.

As a result of St. Paul's violations of ORS 659A.199, Plaintiff is entitled to equitable relief, economic damages not to exceed $150,000.00 and to be determined by a jury at the time of trial for back pay, benefits, and front pay, and compensatory damages not to exceed $1,000,000.00 and to be determined by a jury at the time of trial. To the extent that any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

18.

Pursuant to ORS 659A.885, Plaintiff is entitled to her reasonable attorney fees, costs, expert witness fees, and disbursements in this action.

### (Count II–Violation of 659A.203)

19.

Plaintiff realleges paragraphs 1-18. According to ORS 659A.203(1)(b), "it is an unlawful employment practice for any public employer to prohibit any employee from disclosing, or take or threaten to take disciplinary action against an employee for the disclosure of any information that the employee reasonably believes is evidence of a violation of any federal or state law, rule or regulations by the state, agency or political subdivision" or "mismanagement, gross waste of

Page 54—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

funds or abuse of authority or substantial and specific danger to public health and safety resulting from action of the state, agency or political subdivision." According to ORS 659A.203(1)(d), it is also an unlawful employment practice to "discourage, restrain, dissuade, coerce, prevent or otherwise interfere with disclosure or discussions described in this section." ORS 659A.203(2) continues, "No public employer shall invoke or impose any disciplinary action against an employee for employee activity described in subsection (1) of this section or ORS 659A.212."

20.

St. Paul is a public employer pursuant to ORS 659A.200 *et seq.*

21.

Plaintiff disclosed information that she reasonably believed was evidence of violations of federal law, state law, rule, the city Charter, and regulations, which included, but were not limited to, disclosures of mismanagement, abuse of authority, gross waste of funds, and substantial and specific danger to public health and safety. St. Paul threatened to take and took disciplinary action against Plaintiff in retaliation for the disclosures. In addition, St. Paul subjected Plaintiff to a hostile work environment in retaliation for the disclosures. St. Paul also discouraged, restrained, dissuaded, coerced, prevented and otherwise interfered with Plaintiff's disclosures and discussions referenced in paragraph 7 above.

22.

As a result of St. Paul's unlawful employment actions, Plaintiff suffered and continues to suffer humiliation, anxiety, distress, and impairment of Plaintiffs personal dignity and right to be free from discrimination or interference with Plaintiff's statutory rights. Plaintiff has also suffered, and continues to suffer, economic damages, including, but not limited to, past and future wages, past and future benefits, and other expenses.

///

Page 55—Complaint

23.

Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

24.

Plaintiff is entitled to equitable relief, including, but not limited to, an award of back pay, lost benefits, future lost earnings and benefits, and other compensatory damages for future pecuniary losses.

25.

Plaintiff requests a declaration by this Court that St. Paul violated ORS 659A.203.

26.

As a result of St. Paul's violations of ORS 659A.203, Plaintiff is entitled to equitable relief, economic damages not to exceed $150,000.00 and to be determined by a jury at the time of trial for back pay, benefits, and front pay, and compensatory damages not to exceed $1,000,000.00 and to be determined by a jury at the time of trial. To the extent that any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

27.

Pursuant to ORS 659A.885, Plaintiff is entitled to her reasonable attorney fees, costs, expert witness fees, and disbursements in this action.

///

///

///

Page 56—Complaint

**Count III—Violation of ORS 659A.218)**

28.

Plaintiff realleges paragraphs 1-27. According to ORS 659A.218 (1), "The identity of the employee who discloses any of the following shall not be disclosed by a public employer without the written consent of the employee during any investigation of the information provided by the employee, relating to: (a) Matters described in ORS 659A.203 (1)(b)."

29.

St. Paul is a public employer pursuant to ORS 659A.200 *et seq.*

30.

Plaintiff disclosed information relating to matters described in ORS 659A.203 in good faith. Plaintiff's identity was disclosed by St. Paul during an investigation of the information provided by Plaintiff as well as disclosures via Facebook and comments to media. Plaintiff never provided written consent. The actions of St. Paul constitute a violation of ORS 659A.218.

31.

As a result of St. Paul's unlawful employment actions, Plaintiff suffered and continues to suffer humiliation, anxiety, distress, and impairment of Plaintiffs personal dignity and right to be free from discrimination or interference with Plaintiffs statutory rights. Plaintiff has also suffered, and continues to suffer, economic damages, including, but not limited to, past and future wages, past and future benefits, and other expenses.

32.

Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

///

Page 57—Complaint

33.

Plaintiff is entitled to equitable relief including, but not limited to, an award of back pay, lost benefits, future lost earnings and benefits, and other compensatory damages for future pecuniary losses.

34.

Plaintiff requests a declaration by this Court that St. Paul violated ORS 659A.218.

35.

As a result of St. Paul's violations of ORS 659A.218, Plaintiff is entitled to equitable relief, economic damages not to exceed $10,000.00 and to be determined by a jury at the time of trial for back pay, benefits, and front pay, and compensatory damages not to exceed $200,000.00 and to be determined by a jury at the time of trial. To the extent that any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

36.

Pursuant to ORS 659A.885, Plaintiff is entitled to her reasonable attorney fees, costs, expert witness fees, and disbursements in this action.

**(Count IV—Violation of ORS 659A.230)**

37.

Plaintiff realleges paragraphs 1-36. According to ORS 659A.230, "it is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee . . . for the reason that the employee has in good faith reported criminal activity by any person, has in good faith caused a complainant's information or complaint to be filed against any person, has in good faith cooperated with any

Page 58—Complaint

law enforcement agency conducting a criminal investigation, has in good faith brought a civil proceeding against an employer or has testified in good faith at a civil proceeding or criminal trial."

38.

St. Paul is a public employer pursuant to ORS 659A.230.

39.

Plaintiff engaged in protected activity pursuant to ORS 659A.230, as alleged in paragraph 7 above, when she reported and disclosed evidence of what Plaintiff reasonably believed to be criminal conduct, including, but not limited to, official misconduct. Plaintiff was retaliated against as alleged above for engaging in this protected activity. The actions of St. Paul constitute a violation of ORS 659A.230.

40.

As a result of St. Paul's unlawful employment actions, Plaintiff suffered and continues to suffer humiliation, anxiety, distress, and impairment of Plaintiffs personal dignity and right to be free from discrimination or interference with Plaintiffs statutory rights. Plaintiff has also suffered, and continues to suffer, economic damages, including, but not limited to, past and future wages, past and future benefits, and other expenses.

41.

Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

///

///

///

Page 59—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

42.

Plaintiff is entitled to equitable relief, including, but not limited to, an award of back pay, lost benefits, future lost earnings and benefits, and other compensatory damages for future pecuniary losses.

43.

Plaintiff requests a declaration by this Court that St. Paul violated ORS 659A.230.

44.

As a result of St. Paul's violations of ORS 659A.230, Plaintiff is entitled to equitable relief, economic damages not to exceed $150,000.00 and to be determined by a jury at the time of trial for back pay, benefits, and front pay, and compensatory damages not to exceed $1,000,000.00 and to be determined by a jury at the time of trial. To the extent that any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

45.

Pursuant to ORS 659A.885, Plaintiff is entitled to her reasonable attorney fees, costs, expert witness fees, and disbursements in this action.

### SECOND CLAIM AGAINST ST. PAUL—VIOLATION OF 42 U.S.C. § 1983

### (Count 1—Free Speech)

46.

Plaintiff realleges paragraphs 1-45. 42 U.S.C. § 1983 provides that a party shall be liable when it "subjects, or causes to be subjected, any person of the United States . . . deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States."

///

Page 60—Complaint

47.

At all times material to this Complaint, the employees and officers of St. Paul acted or purported to act in the performance of official duties under state, county, or municipal law, Charter, ordinances or regulations. St. Paul's violation of Plaintiff's federal rights were attributable to enforcement of St. Paul's "policy, custom, or practice."

48.

St. Paul violated Plaintiff's right to free speech under the First and Fourteenth Amendments. Plaintiff complained about practices and policies as alleged in paragraph 7 above that she reasonably believed to by violations of law. Plaintiff made these complaints as a citizen and regarding what she reasonably believed were violations of state and federal laws and regulations. These are matters of public concern. Plaintiff's statements did not disrupt the efficiency of the office. St. Paul took actions to prohibit Plaintiff from engaging in the speech. St. Paul took adverse employment actions against Plaintiff and discharged her from employment after Plaintiff engaged in this speech. Plaintiff's speech was a substantial and motivating factor for the adverse employment actions.

49.

The above mentioned actions of St. Paul, in interfering with and retaliating against Plaintiff for engaging in protected speech, constitutes a violation of 42 U.S.C. § 1983 for which Plaintiff is entitled to relief. The violations of 42 U.S.C. § 1983 by St. Paul resulted in Plaintiff being deprived of his rights, privileges, or immunities secured by the Constitution and laws of the United States. St. Paul's retaliation towards Plaintiff because she engaged in protected speech, as alleged in the above mentioned paragraphs, constitutes a violation of 42 U.S.C. § 1983 for which Plaintiff is entitled to relief.

///

Page 61—Complaint

50.

As a result of St. Paul's violations of 42 U.S.C. § 1983, Plaintiff has suffered economic damages in an amount not to exceed $150,000.00, and to be determined by a jury at the time of trial, along with non-economic damages in an amount not to exceed $1,500,000.00 and to be determined by a jury at the time of trial. Plaintiff seeks recovery of all compensatory and punitive damages provided by law, in addition to reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

**(Count 2—Due Process)**

51.

Plaintiff realleges paragraphs 1-50. 42 U.S.C. § 1983 provides that a party shall be liable when it "subjects, or causes to be subjected, any person of the United States . . . deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States."

52.

At all times material to this Complaint, the employees and officers of St. Paul acted or purported to act in the performance of official duties under state, county, or municipal law, Charter, ordinances or regulations. St. Paul's violation of Plaintiff's federal rights were attributable to enforcement of St. Paul's "policy, custom, or practice."

53.

Plaintiff had a property interest in continued employment with St. Paul. St. Paul violated Plaintiff's right to procedural and substantive due process under the First and Fourteenth Amendments when it took numerous adverse employment actions against Plaintiff that culminated in her termination of employment.

///

///

Page 62—Complaint

Law Office of Larry L. Linder, LLC
3000 Market Street NE, Suite 150
Salem, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

54.

The above mentioned actions of St. Paul, in violating Plaintiff's due process rights, constitutes a violation of 42 U.S.C. § 1983 for which Plaintiff is entitled to relief. The violations of 42 U.S.C. § 1983 by St. Paul resulted in Plaintiff being deprived of her rights, privileges, or immunities secured by the Constitution and laws of the United States. for which Plaintiff is entitled to relief.

55.

As a result of St. Paul's violations of 42 U.S.C. § 1983, Plaintiff has suffered economic damages in an amount not to exceed $150,000.00, and to be determined by a jury at the time of trial, along with non-economic damages in an amount not to exceed $1,500,000.00 and to be determined by a jury at the time of trial. Plaintiff seeks recovery of all compensatory and punitive damages provided by law, in addition to reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

**THIRD CLAIM AGAINST SCHROEDER AND WALLIS—**

**VIOLATION OF 42 U.S.C. § 1983**

56.

Plaintiff realleges paragraphs 1-55. 42 U.S.C. § 1983 provides that a party shall be liable when it "subjects, or causes to be subjected, any person of the United States . . . deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States."

57.

Defendants, Wallis and Schroeder, acting under color of law, in an individual capacity, misused their powers with a conscious disregard for Plaintiff's constitutional rights. In addition, or in the alternative, their conduct was wanton, reckless, and in disregard of Plaintiff's well-established constitutional rights and they knew or reasonably should have known that their

Page 63—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

conduct was below the standard prescribed by law herein. Wallis and Schroeder's conduct was well defined by law and each defendant knew or reasonably should have known that their conduct was below the standard prescribed by law herein.

58.

Wallis and Schroeder violated Plaintiff's right to free speech under the First and Fourteenth Amendments. Plaintiff engaged in protected speech, as alleged above in paragraph 7 above.

59.

Plaintiff's speech regarded matters of public concern. Plaintiff's disclosures were as a citizen and not part of his duties associated with his employment. Plaintiff's statements did not disrupt the efficiency of the office. Wallis and Schroeder took actions to dissuade and prohibit Plaintiff from engaging in the speech as alleged in paragraph 7 above. Wallis and Schroeder took adverse employment actions against Plaintiff in retaliation to Plaintiff engaging in this speech as alleged above. Plaintiff's speech was a substantial and motivating factor for the adverse employment actions.

60.

Wallis and Schroeder's conduct was well defined by law and they knew or reasonably should have known that their conduct was below the standard prescribed by law herein. Wallis and Schroeder misused their powers with a willful and malicious intent to deprive Plaintiff of her right to freedom of speech and cause him grievous injuries thereby. Wallis and Schroeder, in acting to deprive Plaintiff of her right to freedom of speech, acted intentionally, knowingly, willfully, and with gross disregard to Plaintiff's rights.

///

///

Page 64—Complaint

Law Office of Larry L. Linder, LLC
3000 Market Street NE, Suite 150
Salem, OR 97301
(T)(503)585-1804 (F) (503)585-1834
info@salememploymentlawyer.com

61.

The actions of Wallis and Schroeder alleged in paragraph 7 above, in interfering with and retaliating against Plaintiff for engaging in protected speech, constitutes a violation of 42 U.S.C. § 1983 for which Plaintiff is entitled to relief. The violations of 42 U.S.C. § 1983 by Wallis and Schroeder resulted in Plaintiff being deprived of her rights, privileges, or immunities secured by the Constitution and laws of the United States. Wallis and Schroeder's actions towards Plaintiff, because she engaged in protected speech, as alleged in the above mentioned paragraphs, constitutes a violation of 42 U.S.C. § 1983 for which Plaintiff is entitled to relief.

62.

As a direct and proximate cause of Wallis and Schroeder's violations of Plaintiff's First and Fourteenth Amendment rights, Plaintiff requests equitable relief, economic damages in an amount not to exceed $150,000.00 and to be determined by a jury at the time of trial in addition to non-economic damages not to exceed $1,500,000.00 and to be determined by a jury at the time of trial. Plaintiff seeks recovery of all equitable relief, economic damages, and compensatory damages provided by law, in addition to reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

**FOURTH CLAIM AGAINST WALLIS AND SCHROEDER—VIOLATION OF ORS 659A.030(1)(g) (Aiding and Abetting)**

63.

Plaintiff realleges paragraphs 1-62. Pursuant to ORS 659A.030(1)(g), it is an unlawful employment practice "for any person, whether an employer or an employee, to aid, abet, incite, compel or coerce the doing of any acts forbidden under this chapter or to attempt to do so." As mayor of St. Paul, Wallis' conduct is imputed to St. Paul by virtue of his position. As legal counsel for St. Paul, Schroeder's conduct is imputed on St. Paul by virtue of her position and

Page 65—Complaint

contract with St. Paul and/or she is in a position where she can strongly influence the decisions of St. Paul.

64.

As alleged in the paragraph 8 above, Wallis and Schroeder's actions and inactions aided, abetted, incited, compelled, and coerced St. Paul into violating ORS 659A.199, ORS 659A.203, ORS 659A.218, and ORS 659A.230.

65.

As a result of Wallis and Schroeder's unlawful actions, Plaintiff suffered and continues to suffer humiliation, anxiety, distress, and impairment of Plaintiff's personal dignity and right to be free from discrimination or interference with Plaintiff's statutory rights. Plaintiff has also suffered, and continues to suffer, economic damages, including, but not limited to, past and future wages, past and future benefits, and other expenses.

66.

Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

67.

Plaintiff is entitled to equitable relief, including, but not limited to, an award of back pay, lost benefits, future lost earnings and benefits, and other compensatory damages for future pecuniary losses.

68.

Plaintiff requests an order by this Court declaring that Wallis and Schroeder violated ORS 659A.030(1)(g).

///

Page 66—Complaint

69.

As a result of Wallis and Schroeder's violations of ORS 659A.030(1)(g), Plaintiff requests equitable relief, economic damages not to exceed 150,000.00, and to be determined by a jury at the time of trial for back pay, front pay, and benefits; and compensatory damages not to exceed $1,000,000.00 and to be determined by a jury at the time of trial.

70.

Pursuant to ORS 659A.885, Plaintiff is entitled to her reasonable attorney fees, costs, expert witness fees, and disbursements in this action.

## FIFTH CLAIM AGAINST ST. PAUL—INTENTIONAL INFLICTION OF SEVERE EMOTIONAL DISTRESS (Special Relationship)

71.

Plaintiff realleges paragraphs 1-70. Plaintiff had an employer-employee relationship with St. Paul. St. Paul and its agents knew that the aforementioned conduct would cause severe mental or emotional distress or acted despite a high degree of probability that the mental or emotional distress would result.

72.

St. Paul's conduct caused Plaintiff severe mental or emotional distress from the foreseeable highly unpleasant emotional reactions including fright, grief, shame, humiliation, embarrassment, anger, disappointment, and worry.

73.

The aforementioned continuing actions of St. Paul consisted of an extraordinary transgression of contemporary standards of civilized conduct toward an employee.

///

///

Page 67—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

74.

As a result of St. Paul's intentional actions, Plaintiff has suffered non-economic damages not to exceed $1,000,000.00 and to be determined by a jury at the time of trial. Plaintiff requests her costs and disbursements in bringing this action.

## SIXTH CLAIM AGAINST WALLIS—INTENTIONAL INFLICTION OF SEVERE EMOTIONAL DISTRESS

75.

Plaintiff realleges paragraphs 1-74. Wallis knew that the aforementioned conduct would cause severe mental or emotional distress or acted despite a high degree of probability that the mental or emotional distress would result.

76.

Wallis' conduct caused Plaintiff severe mental or emotional distress from the foreseeable highly unpleasant emotional reactions including fright, grief, shame, humiliation, embarrassment, anger, disappointment, and worry.

77.

The aforementioned continuing actions of Wallis consisted of an extraordinary transgression of the bounds of socially tolerable behavior.

78.

As a result of Wallis' intentional actions, Plaintiff has suffered non-economic damages not to exceed $1,000,000.00 and to be determined by a jury at the time of trial. Plaintiff requests her costs in bringing this action.

///

///

///

Page 68—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

## SEVENTH CLAIM AGAINST WALLIS AND SCHROEDER—INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS

79.

Plaintiff realleges paragraphs 1-78. Plaintiff had an economic relationship with the city of St. Paul as an employee.

80.

Wallis and Schroeder were not parties to the contract for employment.

81.

Wallis and Schroeder intended to interfere with the contract for employment.

82.

Wallis and Schroeder did in fact interfere with the contract through improper means and/or for an improper purpose.

83.

Wallis and Schroeder's interference caused harm to the employment relationship that Plaintiff had with the city of St. Paul.

84.

As a result of Wallis and Schroeder's intentional interference with Plaintiff's economic relations with the city of St. Paul, Plaintiff has suffered economic damages in an amount not to exceed $150,000.00 and to be determined by a jury at the time of trial, and non-economic damages in an amount not to exceed $500,000.00 and to be determined by a jury at the time of trial. Plaintiff requests her costs in bringing this action.

///

///

///

Page 69—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

## EIGHTH CLAIM AGAINST WALLIS AND SCHROEDER—DEFAMAMTION

85.

Plaintiff realleges paragraph 1-84. At all times material herein, Plaintiff was and has been a city recorder; and Plaintiff, by good conduct, industry and ability, had attained an excellent reputation in Plaintiff's profession prior to Wallis and Schroeder's false allegations.

86.

Wallis and Schroeder made allegations of fact that they knew to be false and defamatory publications were intended to convey, and did convey, to the community at large, the impression that Plaintiff caused financial harm to the city, was incompetent, and was unfit for her position.

87.

These publications were calculated to, and did, hold Plaintiff up to public scorn, hatred, and ridicule; by such publication, Wallis and Schroeder meant, and intended to mean, that Plaintiff caused financial harm to the city, was incompetent, and was unfit for his position, and was so understood by readers and listeners to Wallis and Schroeder's written and oral statements.

88.

Conduct alleged by Wallis and Schroeder had a direct dilatory impact on Plaintiff's business profession and professional reputation.

89.

Wallis published false claims on social media and in the newspaper as alleged above.

90.

Schroeder made false claims and statements in public meetings about Plaintiff as alleged above.

///

///

Page 70—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

91.

Plaintiff suffered severe emotional distress, and financial harm as a direct and proximate result of Wallis and Schroeder's conduct.

92.

As a result of Wallis and Schroeder's defamation of Plaintiff, Plaintiff has suffered economic damages in an amount not to exceed $150,000.00 and to be determined by a jury at the time of trial, and non-economic damages in an amount not to exceed $500,000.00 and to be determined by a jury at the time of trial. Plaintiff requests her costs in bringing this action.

**NINTH CLAIM AGAINST WALLIS—PUBLIC DISCLOSURE OF PRIVATE FACTS**

93.

Plaintiff realleges paragraphs 1-92. Wallis disclosed private facts about Plaintiff to the public generally and the disclosure was in a form of publicity of a highly objectionable kind. The private facts that Wallis disclosed would be highly offensive to a reasonable person and is not of legitimate concern to the public. The manner or purpose of Wallis' conduct in publicly disclosing private facts about Plaintiff was wrongful.

94.

Plaintiff has suffered mental anguish, humiliation, anxiety, distress, and impairment of Plaintiffs personal dignity as a result of the public disclosure of private facts. As a result of Wallis' actions, Plaintiff has suffered economic damages in an amount not to exceed $10,000.00 and to be determined by a jury at the time of trial, and non-economic damages in an amount not to exceed $250,000.00 and to be determined by a jury at the time of trial. Plaintiff requests his costs in bringing this action.

///

///

Page 71—Complaint

**TENTH CLAIM AGAINST WALLIS—FALSE LIGHT**

95.

Plaintiff realleges paragraphs 1-94. Wallis published statements regarding Plaintiff that placed him in a false light that would be highly offensive to a reasonable person. These statements were published with knowledge or reckless disregard as to the truth or falsity of the publicized matter and the false light in which Plaintiff would be placed. Wallis knew that Plaintiff would reasonably be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity.

96.

Plaintiff has suffered mental anguish, humiliation, anxiety, distress, and impairment of Plaintiffs personal dignity as a result of the false light in which she was placed. As a result of Wallis' actions, Plaintiff has suffered economic damages in an amount not to exceed $10,000.00 and to be determined by a jury at the time of trial, and non-economic damages in an amount not to exceed $500,000.00 and to be determined by a jury at the time of trial. Plaintiff requests her costs in bringing this action.

**ELEVENTH CLAIM AGAINST ST. PAUL—VIOLATION OF**

**ORS 659A.030(1)(f) (Retaliation)**

97.

Plaintiff realleges paragraphs 1-96. According to ORS 659A.030(1)(f), it is an unlawful employment practice, "for any person to discharge, expel or otherwise discriminate against any other person because that other person has opposed any unlawful practice, or because that other person has filed a complaint, testified or assisted in any proceeding under this chapter or has attempted to do so." Discrimination committed by St. Paul, as alleged above, affected Plaintiff's

///

Page 72—Complaint

employment opportunities, compensation, and terms and conditions of employment and is a direct violation of this statute.

98.

Plaintiff suffered from retaliation based on her complaints of sex discrimination. The retaliation Plaintiff suffered includes the allegations in paragraph 8 above in addition to retaliation that includes, but is not limited to:

a) St. Paul violated its policy stating that "all complaints of harassment will be investigated promptly and impartially;"

b) Repeated statements by Wallis both privately and in public meetings that Plaintiff's complaint was the reason for substantial legal fees being incurred;

c) Repeated refusal to investigate her complaints and then conducting a sham investigation two years later;

d) Councilor Halter told Bernard to be ready for a telephone call, because Plaintiff was coming after him;

e) On or about September 21, 2017, Councilor Bernard came into the office and stated he was told by Councilor Halter that Plaintiff filed a sexual harassment complaint against him. Bernard proceeded to confront Plaintiff about her claim. Plaintiff asked Bernard to step outside to have the conversation because she felt trapped in the office. When they stepped outside, Bernard continued to confront Plaintiff about the complaint while Wallis walked by. During this confrontation that had Plaintiff in tears, Bernard told Plaintiff that she started all this as though he was the victim having sexually harassed her; and

f) Terminating Plaintiff's employment.

///

///

Page 73—Complaint

Law Office of Larry L. Linder, LLC
3000 Market Street NE, Suite 150
Salem, OR 97301
(T)(503)585-1804 (f) (503)585-1834
info@salememploymentlawyer.com

99.

St. Paul's employees and agents' retaliation toward Plaintiff negatively affected her compensation, terms, conditions, and privileges of employment in violation of ORS 659A.030(1)(f).

100.

As a result of St. Paul's unlawful employment actions, Plaintiff suffered humiliation, anxiety, distress, and impairment of Plaintiff's personal dignity and right to be free from discrimination or interference with Plaintiffs statutory rights. Plaintiff has also suffered economic damages, including, but not limited to, past wages, past benefits, and other expenses.

101.

Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

102.

Plaintiff is entitled to equitable relief, including, but not limited to, an award of back pay, lost benefits, and other compensatory damages.

103.

Plaintiff requests a declaration by this Court that St. Paul violated ORS 659A.030(1)(f) in addition to any other equitable relief that this Court deems proper.

104.

As a result of St. Paul's retaliation, Plaintiff is entitled to equitable relief, economic damages not to exceed $150,000.00 and to be determined by a jury at the time of trial for back pay, benefits, and front pay, and compensatory damages not to exceed $1,000,000.00 and to be determined by a jury at the time of trial. To the extent that any amount awarded to Plaintiff is for

Page 74—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment. In accordance with ORS 659A.885 and ORS 20.107, Plaintiff requests and is entitled to her reasonable attorney fees, costs, expert witness fess, and disbursements in this action.

WHEREFORE, Plaintiff requests $4,960,000.00 in damages, in addition to equitable relief, costs, and attorney's fees for his claims against Defendants as delineated below:

1.      **For Plaintiff's First Claim for Relief Against St. Paul:**

**Count I:** Equitable relief, economic damages not to exceed $150,000.00 and to be determined by a jury at the time of trial for back pay, benefits, and front pay, and compensatory damages not to exceed $1,000,000.00 and to be determined by a jury at the time of trial. To the extent that any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment. Pursuant to ORS 659A.885, Plaintiff is entitled to her reasonable attorney fees, costs, expert witness fees, and disbursements in this action.

**Count II:** Equitable relief, economic damages not to exceed $150,000.00 and to be determined by a jury at the time of trial for back pay, benefits, and front pay, and compensatory damages not to exceed $1,000,000.00 and to be determined by a jury at the time of trial. To the extent that any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment. Pursuant to ORS 659A.885, Plaintiff is entitled to her reasonable attorney fees, costs, expert witness fees, and disbursements in this action.

**Count III:**  Equitable relief, economic damages not to exceed $10,000.00 and to be

Page 75—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

determined by a jury at the time of trial for back pay, benefits, and front pay, and compensatory damages not to exceed $200,000.00 and to be determined by a jury at the time of trial. To the extent that any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment. Pursuant to ORS 659A.885, Plaintiff is entitled to her reasonable attorney fees, costs, expert witness fees, and disbursements in this action.

**Count IV:** Equitable relief, economic damages not to exceed $150,000.00 and to be determined by a jury at the time of trial for back pay, benefits, and front pay, and compensatory damages not to exceed $1,000,000.00 and to be determined by a jury at the time of trial. To the extent that any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment. Pursuant to ORS 659A.885, Plaintiff is entitled to her reasonable attorney fees, costs, expert witness fees, and disbursements in this action.

2. **For Plaintiff's Second Claim for Relief Against St. Paul:**

**Count I:** Economic damages in an amount not to exceed $150,000.00, and to be determined by a jury at the time of trial, along with non-economic damages in an amount not to exceed $1,500,000.00 and to be determined by a jury at the time of trial. Plaintiff seeks recovery of all compensatory and punitive damages provided by law, in addition to reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

**Count II:** Economic damages in an amount not to exceed $150,000.00, and to be determined by a jury at the time of trial, along with non-economic damages in an amount not to exceed $1,500,000.00 and to be determined by a jury at the time of trial. Plaintiff

Page 76—Complaint

seeks recovery of all compensatory and punitive damages provided by law, in addition to reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

3.    **For Plaintiff's Third Claim for Relief Against Wallis and Schroeder:**  Economic damages not to exceed $150,000.00, and to be determined by a jury at the time of trial for back pay, front pay, and benefits, non-economic damages not to exceed $1,500,000.00 and to be determined by a jury at the time of trial, and equitable relief. Plaintiff seeks recovery of all equitable relief, economic damages, and compensatory damages provided by law, in addition to reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

4.    **For Plaintiff's Fourth Claim for Relief Against Wallis and Schroeder:**  Economic damages not to exceed $150,000.00, and to be determined by a jury at the time of trial for back pay, front pay, and benefits, compensatory damages not to exceed $1,000,000.00 and to be determined by a jury at the time of trial, and equitable relief. Pursuant to ORS 659A.885, Plaintiff is entitled to his reasonable attorney fees, costs, expert witness fees, and disbursements in this action.

5.    **For Plaintiff's Fifth Claim for Relief Against St. Paul:**  Non-economic damages not to exceed $1,000,000.00 and to be determined by a jury at the time of trial. Plaintiff requests his costs and disbursements in bringing this action.

6.    **For Plaintiff's Sixth Claim for Relief Against Wallis:** Non-economic damages not to exceed $1,000,000.00 and to be determined by a jury at the time of trial. Plaintiff requests his costs in bringing this action.

7.    **For Plaintiff's Seventh Claim for Relief Against Wallis and Schroeder:** Economic damages in an amount not to exceed $150,000.00 and to be determined by a jury at the time of trial, and non-economic damages in an amount not to exceed $500,000.00 and to be determined by a jury at the time of trial. Plaintiff requests his costs in bringing this

Page 77—Complaint

Law Office of Larry L. Linder, LLC
3000 Market Street NE, Suite 150
Salem, OR 97301
(T)(503)585-1804 (f) (503)585-1834
info@salememploymentlawyer.com

action.

8.    **For Plaintiff's Eighth Claim for Relief Against Wallis and Schroeder:**  Economic damages in an amount not to exceed $150,000.00 and to be determined by a jury at the time of trial, and non-economic damages in an amount not to exceed $500,000.00 and to be determined by a jury at the time of trial. Plaintiff requests his costs in bringing this action.

9.    **For Plaintiff's Ninth Claim for Relief Against Wallis:** Economic damages in an amount not to exceed $10,000.00 and to be determined by a jury at the time of trial, and non-economic damages in an amount not to exceed $250,000.00 and to be determined by a jury at the time of trial. Plaintiff requests his costs in bringing this action.

10.    **For Plaintiff's Tenth Claim for Relief Against Wallis:** Economic damages in an amount not to exceed $10,000.00 and to be determined by a jury at the time of trial, and non-economic damages in an amount not to exceed $500,000.00 and to be determined by a jury at the time of trial. Plaintiff requests his costs in bringing this action.

11.    **For Plaintiff's Eleventh Claim for Relief Against St. Paul:**  Equitable relief, economic damages not to exceed $150,000.00 and to be determined by a jury at the time of trial for back pay, benefits, and front pay, and compensatory damages not to exceed $1,000,000.00 and to be determined by a jury at the time of trial. To the extent that any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment. Pursuant to ORS 659A.885, Plaintiff is

///

///

///

Page 78—Complaint

entitled to her reasonable attorney fees, costs, expert witness fees, and disbursements in this action.

DATED this 23rd day of March 2018.

                                  **/s/Larry L. Linder**
Larry L. Linder      OSB#010724
Of Attorneys for Plaintiff
Law Office of Larry L. Linder, LLC
3000 Market St. NE, Suite 150
Salem, Oregon 97301
Telephone: (503) 585-1804
Facsimile: (503) 585-1834
llinder@salememploymentlawyer.com

Page 79—Complaint